UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

UNITED STATES OF AMERICA

       -against-                               MEMORANDUM OF LAW
                                                10-CR-1020 (ENV)

ABDEL HAMEED SHEHADEH,
    also known as "Abul-Qasim,"
    "Abdul-Qasim Ibn Abu
    Muhammad, "Sunnah101 and
    "Abu Baheera,"

                  Defendant.
------------------------------------------------------------X


RESPONSE TO GOVERNMENT'S MEMORANDUM OF LAW IN
OPPOSITION TO THE DEFENDANT'S MOTION TO SUPPRESS


FREDERICK H. COHN
Attorney for Defendant
111 Broadway, Suite 1805
New York, New York 10006

Statement of the case

This memorandum is submitted in reply to the Government's opposition to a motion to suppress filed by the defendant. Defendant has moved to suppress his post arrest statement on the grounds that statements made to him by an Assistant United States Attorney coerced him into making the lengthy statement.

In support of his motion the defendant filed an affidavit. The Government has chosen not to file an affidavit contesting those facts. Instead the Government promises that the facts as brought out in the hearing will rebut the allegations of the defendant.

## POINT I
## THE DEFENDANT IS ENTITLED TO KNOW WHAT FACTS THE GOVERNMENT RELIES ON IN ADVANCE OF A HEARING.

The government's response to the motion is a curious one. Normally, if they contest the facts, there is declaration by someone with knowledge of those facts which focus for the court and the movant, what the claims are.

Here, while implicitly conceding that a hearing is necessary, the Government has chosen not to have a factual response from the assistant whose alleged conduct has sparked this controversy. It is true that the Government sets forth on page 9 of its response a litany of conclusory statements about the effect of what was said with some hearsay allegations about parts of the actual

1

conversation. This, we respectfully maintain, is insufficient.

## POINT II
## THE STATEMENT WAS INVOLUNTARY

The Government properly asserts that it is the totality of the circumstances which must be considered by the Court. Unfortunately, the Government's assertion of the rule does not guarantee the propriety of the facts asserted in support thereof.

They cite **Pardad v. Greiner**, 337 F.3d 175 (2d Cir. 2003) for the above proposition but, **Parsad** deals with the coercive nature of an unmirandized confession on a later Mirandized one. Quoting the Supreme court in **Oregon v. Elstead**, 470 U.S. 298, 105 S.Ct. 1285 the Circuit said, "absent coercive or improper tactics ......does not warrant a presumption of compulsion." P183. (Internal quotation marks omitted) (underlining supplied)

This is not case of police misconduct where the tactics of the police generally receive the judicial wink and nod. The allegation here is that the tactic of the Government was to involve an attorney/prosecutor whose conduct, if the defendant's allegations are believed, led directly to the statement complained of here.

2

In regard to the other "characteristics" of the defendant, the Government devotes four and one half pages of its twenty two page submission to recitation of ten prior interviews of the defendant with the FBI. One must assume that, if the government has any theory of relevancy to this application, it must be that the defendant was familiar with the process and comfortable with it.[1]

First, it is apparent that at the time of those other statements, the defendant was neither arrested nor detained. There in fact was no threat of arrest. At the hearing the purposes of those interviews and the defendant's participation in them will be made apparent.[2] Suffice it to say that the threat of prosecution was not apparent and the attempt by the Government to confuse the right of law abiding citizens to speak to law enforcement and the right not to speak to law enforcement when under arrest should not be countenanced.

The Government properly chastises counsel for not picking up that the Disciplinary Rules had changed. *Mea culpa*. The Government then goes on to produce the new Rule which essentially says the same thing.

---

[1] The defendant does not wish, by not responding to the content, to appear to accept the allegations in the 302's as to what was said. Those 302's are replete with misstatements as to what the defendant said and, if they are ruled admissible at trial, those misstatements should be open to challenge.

[2] Because of the press interest in this case and the unintended consequences of the open filing of the 302 from the date of arrest, counsel forebears herein from setting forth the context. Should the court wish it set forth under seal, counsel will do so.

3

The facts here are not that the AUSA passed himself off as disinterested. He gave false advice when he was interested and the defendant relied on his interest in assessing the truth of the statement. Had he been telling the truth there was a possibility in the defendant's mind that he could continue in the role that had been assigned to him which was the basis for his prior statements.

The assistant knew about the prior role of the defendant with the FBI or some other agency. The fact that an assistant who is prosecuting this case went to Hawaii at the time of this arrest in fact should give this Court pause in accepting the conclusions offered from the Government's version of the facts, should the Government ever make that version clear.

The Government knew that an arrest and arraignment would foreclose a course of conduct on which the defendant had embarked for a year. It was that fear that the Government's advice played upon. It is also the crux of the reason the Government's assertion that there was a chance of no arrest was clearly false. It was a pretext to elicit information which the government believed would enhance its chances for a conviction, not for terrorism or giving substantial aid thereto, charges that it knew it could not sustain, but for false statements.

Indeed the disciplinary rule is but a guideline for the Court. Counsel has no interest in disciplining a young assistant because he thoughtlessly intruded himself

4

in the defendant's assertion of his rights or the determination whether or not it was in his interest to waive them. The fact is that before signing the first waiver the defendant insisted on speaking to the assistant and then, only after that conversation, did he sign the first and later the second, both of which we maintain are a nullity.

As the Government points out in its memorandum in opposition, while he was under arrest, he had not yet been arraigned. The Government told him that, by speaking to the agents, he might not be arraigned and the arrest undone. Who, under those circumstances, feeling he was innocent, would not have taken that opportunity?

It is not the content of the statement and the Government's interpretation of what it contains, but the statement itself that is at issue. It should be suppressed.

### POINT III
### UNDER THE CIRCUMSTANCES OF THIS CASE THE RIGHT TO COUNSEL HAD ATTACHED

The Government argues that, as an almost universal rule the right to counsel does not attach until the arraignment. ***Rothgery v. Gillespie County, Texas***, 554 U.S. 191, 128 S.Ct. 2578 (2008). The Government ignores the facts of this case which we maintain generates an exception to the rule.

Normally, when a defendant is Mirandized and he says he/she wants a

lawyer, the prophylaxis is that all questioning stops. No immediate lawyer is necessary although, if the defendant has the wherewithal for private counsel he or she is free to retain one and utilize the services provided to make decisions which, at the earliest stage, can be decisive in the ultimate outcome of the case.

The refusal of the supreme Court to recognize this distinct advantage the rich have over the poor can await another day. This case is different and foreshadowed by the Court .

The appointment of counsel is required whenever it is necessary to protect his interests at trial after "the adverse positions of the government and the unaided layman at a critical confrontation with his <u>expert adversary</u> *after* the adverse positions of the government and defendant have solidified with a particular alleged crime." *Rothgery* , *supra*  p 217-218. (Underlining supplied, emphasis in the original)

Collecting the exceptions to the rule of arraignment only, *ibid* p 218, the *Rothgery* Court makes clear that it is the solidified confrontation that is important. Here, an Assistant United States Attorney flew 5000 miles to be present at the arrest on charges that he knew were being pressed. He intruded into the arrest process from which he had originally been excluded. The proper response to the request of the defendant to speak to a prosecutor would have been to Mirandize

6

him and ask him if he wished an attorney, not to offer a technical rationalization which, in fact, was demonstrably untrue.

Shehadeh was deprived of the right to counsel at that point.

Dated: New York, New York
      February 1, 2012

                                            FREDERICK H. COHN
                                            Attorney for Defendant
                                            111 Broadway, Suite 1805
                                            New York, New York 10006