

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JPL:AK
F.#2008R01056

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 12, 2012

**Via ECF and Hand**

Honorable Eric N. Vitaliano
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:  United States v. Abdel Hameed Shehadeh
           Criminal Docket No. 10-1020 (ENV)

Dear Judge Vitaliano:

      The government submits this letter to notify the Court and the defendant of evidence that it seeks to admit at trial as direct evidence of the charged offenses or, alternatively, pursuant to Rule 404(b) of the Federal Rules of Evidence as evidence of the defendant's motive, intent, preparation and planning to join a jihadist fighting group.

I.    <u>Offense Background</u>

      On December 23, 2010, the defendant was charged in a three-count indictment with making false statements in a matter involving international terrorism, in violation of 18 U.S.C. § Section 1001(a).  The government will prove at trial that the defendant attempted to travel overseas to join a jihadist fighting group and made false statements to federal law enforcement authorities in connection therewith.

    A.    <u>The Defendant's False Statements to the FBI</u>

      At trial, the government will prove that on June 13, 2008, the defendant arrived at JFK Airport to board a flight to Pakistan.  During an interview with federal law enforcement agents prior to boarding his flight, the defendant claimed that he was traveling to Pakistan to attend a madrasa.[1]  The defendant was allowed to board the flight, however, upon arriving in Islamabad, Pakistani officials refused to admit the defendant

---

[1]    A madrasa is an Islamic school.

into Pakistan.   The defendant returned to the United States on June 15, 2008.

        After returning from this trip, the defendant met with federal law enforcement agents on July 16, 2008 in Staten Island, New York.   The defendant stated that he had traveled to Pakistan to visit an Islamic University in Islamabad and to attend the engagement party of a friend in Lahore, but he did not know the full name of his friend or have any contact information for him.

        Finally, on February 10, 2009, the defendant again met in Staten Island, New York with federal law enforcement agents. During this meeting, the defendant reiterated that he had traveled to Pakistan to attend a madrasa for religious purposes, and denied that he had traveled to Pakistan to receive military-type training or join a jihadist terrorist group.   He further stated that he had never told anyone that he intended to receive training, wage jihad or fight in Afghanistan.

  B.   The Government's Direct Evidence at Trial

        The government will prove at trial that (1) the defendant lied to federal law enforcement authorities on June 13, 2008, July 16, 2008 and February 10, 2009, by claiming, inter alia, that he had traveled to Pakistan to attend an Islamic University and a wedding; (2) the defendant's true purpose for traveling to Pakistan was to join a jihadist fighting group; and (3) the defendant told others that the purpose of his trip was to join a jihadist fighting group.

        The government's evidence at trial will include testimony from two witnesses associated with the defendant, Witness #1 and Witness #2, that the defendant's true purpose in traveling to Pakistan was to join a jihadist fighting group. Additionally, the government will introduce the defendant's admissions to the FBI that he traveled to Pakistan in order to join a jihadist fighting group.[2]   The defendant's admissions include the following: (1) if he had been admitted to Pakistan, he "100 percent" would have traveled to the North of Pakistan because he wanted to see the different jihadist groups, including the Taliban; (2) without a doubt, he would have joined the Taliban; (3) with a jihadist group, the defendant expected to

---

[2]        Several of the defendant's admissions were made after he was arrested on October 22, 2010, and waived his Miranda rights.   On February 16, 2012, the Court held a hearing on the defendant's motion to suppress his post-arrest statements.   The Court has reserved ruling on the defendant's motion.

receive training in "guerrilla warfare" and "bomb-making"; and
(4) the defendant considered al-Qaeda and the Taliban to be "one
and the same."

II.  Description of the Evidence the Government Seeks to Admit
     As Direct Evidence or Pursuant to Fed. R. Evid. 404(b)

        The defendant is charged with lying to federal law
enforcement authorities about his true purpose for traveling to
Pakistan: to join a jihadist fighting group.  The government
therefore requests permission to introduce the following evidence
at trial as direct evidence of the charged offenses or,
alternatively, pursuant to Rule 404(b), to prove that the
defendant's motive and intent for traveling to Pakistan was to
join a jihadist fighting group, and to prove the defendant's
ongoing planning and preparation to join such a group.  See Fed.
R. Evid. 404(b).

        The defendant has already received notice of all of the
evidence described below, as he has been provided with this
evidence in Rule 16 discovery, or has otherwise been alerted to
the expected testimony of the government's witnesses as set forth
in the October 21, 2010 complaint.

     A.  Defendant's Pro-Jihadist Online Activities

        The government seeks to introduce evidence that the
defendant was the creator and administrator of multiple web sites
which advocated violent jihad against the West.  These web sites
included www.sunnah101.com, www.civiljihad.com and
www.mymakkah.com.  This evidence will further establish the
defendant's motive and intent to wage violent jihad.

          1.  Defendant's Administration of
              Several Pro-Jihadist Websites

        The government will introduce the defendant's
admissions, during a meeting with the FBI on October 20, 2008,
that (1) he was the owner and administrator of the web sites
www.civiljihad.com and www.mymakkah.com; (2) www.civiljihad.com
was a web site designed to mirror and reformat the teachings of
Awlaki; and (3) the defendant posted video recordings of al-Qaeda
leader Ayman al-Zawahiri and al-Qaeda member Adam Gadahn on
www.mymakkah.com.  The government will also introduce business
records establishing that the defendant was the administrator of
these websites.

                2.   Screen Shots Captured from
                     Defendant's Pro-Jihadist Websites

          The government will introduce screen shots capturing
the defendant's public pro-jihadist internet postings, both
before and after his trip to Pakistan in June 2008.  These screen
shots are largely described in the October 21, 2010 complaint
filed in this matter (see Docket 10-CR-1020 (ENV), Entry 1,
Complaint at ¶¶ 7-14), and include: (1) a video posted by the
defendant of Osama Bin Laden, titled: "To the Peoples of the
West"; (2) a hyperlink posted by the defendant to the web page
www.anwar-alawlaki.com; (3) a video recording posted by the
defendant titled: "Benefits of Jihad in Our Times"; (4) a "jihad"
section of a website administered by the defendant, that
contained, among other things, a speech by Zawahiri, an audio
recording of Awlaki reciting a book on jihad entitled "Mashari al
Ashwaq," and a montage of still images of jihadist fighters under
the heading, "What is the least we can do?"; and (5) a posting by
the defendant on the website www.revolutionmuslim.com.[3]

          B.   Evidence Seized From the
               Defendant's New York Computers[4]

                1.   Consent Search of Desktop Computer

          On April 16, 2009, the FBI executed a consent search of
the defendant's home computer in Staten Island, an HP Pavilion
desktop computer.[5]  Forensic analysis of the hard drive of the
desktop computer revealed Google searches on or before June 2,
2008 for the following words and phrases:

                al qaeda
                baitullah mehsud
                bin laden
                fata
                south waziristan pakistan
                taliban

---

[3]   Revolution Muslim was a radical group based in New York that
had expressed its agreement with the ideologies of al-Qaeda and
other terrorist organizations.

[4]   The information obtained pursuant to criminal search
warrants executed on the defendant's New York and Hawaii
computers was made available for the defendant's review on March
9, 2012.

[5]   This computer was also used by the defendant's family
members.

Evan Kohlmann is expected to testify at trial that South
Waziristan, Pakistan is a Taliban stronghold located in the
"FATA," or Federally Administered Tribal Areas, of Northwest
Pakistan.  Additionally, Baitullah Mehsud was a leading militant
leader of the Taliban in Waziristan, Pakistan who was killed on
August 5, 2009.

Forensic analysis of the hard drive of the computer also revealed
Google searches on or before May 30, 2008 for the following words
and phrases:

        sararogha
        south waziristan
        south waziristan pakistan
        waziristan map

Evan Kohlmann is expected to testify at trial that Sararogha is a
village in South Waziristan, Pakistan, that is a stronghold of
the Taliban.

     The government respectfully submits that the
defendant's online research of al-Qaeda, the Taliban, and South
Waziristan, Pakistan, including searches for a map of Waziristan,
just days before his departure for Pakistan, provides powerful
direct evidence that the defendant lied to the FBI regarding his
purpose for traveling to Pakistan, and 404(b) evidence of the
defendant's planning and preparation to join a jihadist fighting
group in Pakistan.

     2.    Search Warrant Executed on
           Mirror Image of Laptop Hard Drive

     On February 8, 2012, the FBI executed a criminal search
warrant on a mirror image of the hard drive of the defendant's
Toshiba Satellite laptop computer.  Forensic analysis of the hard
drive of the laptop computer revealed a link on his computer,
accessed on or before February 8, 2009, to a file entitled "44
Ways of Supporting Jihad.lnk."  Evan Kohlmann is expected to
testify at trial that "44 Ways of Supporting Jihad" is a sermon
in which Anwar Al-Awlaki encourages others to fight violent
jihad.

     The government respectfully submits that the
defendant's possession and access to this pro-jihadist lecture by
Awlaki within months of returning from his trip to Pakistan, and
prior to his attempted to travel to Somalia, constitutes
additional electronic evidence that the defendant lied to the FBI
regarding his purpose for traveling to Pakistan.

C.   <u>Defendant's Attempt To Join The U.S. Army</u>

The government seeks to introduce evidence that on October 3, 2008, the defendant attempted to join the United States Army under false pretenses, and lied to an Army recruiter and federal law enforcement authorities in connection with his attempted enlistment.  Specifically, the evidence will establish that the defendant sought to join the U.S. Army in order to be deployed to Iraq, at which time he intended to defect and join a jihadist fighting group in Iraq that was engaged in battle against U.S. troops.  This evidence further proves the defendant's motive and intent for traveling to Pakistan: to join a jihadist fighting group engaged in battle against U.S. troops.

1.   <u>Defendant's False Statements to Army Recruiter</u>

The government will introduce evidence that the defendant lied to an Army recruiter when he stated that he had only traveled outside of the United States on one occasion, to Israel, by failing to disclose that he had traveled to Pakistan and been denied entry by the Pakistani government.  To corroborate his travel history, the defendant showed the recruiter an expired passport with an Israeli stamp.  This passport did not contain the defendant's Pakistani visa.

2.   <u>Evidence of Alteration of Passport</u>

The government will introduce evidence that on October 20, 2008, the defendant was interviewed by federal law enforcement authorities, at which time he stated that he had a problem with his Army enlistment because he had not disclosed his travel to Pakistan.  When an FBI agent examined the defendant's passport, he observed, and the defendant confirmed, that he had ripped out the Pakistani visa for his June 13, 2008 travel.[6]

3.   <u>Defendant's False Statements to Witnesses 1 and 2</u>

Witness #1 is expected to testify that the defendant informed Witness #1 that he attempted to join the Army as part of his jihad.  The defendant stated that he hoped to be deployed to Iraq, at which time he would commit "treason" and fight United States soldiers.  Witness #2 is expected to testify that he understood that the defendant intended to join the United States

---

[6]   During the execution of a search warrant at the defendant's Hawaii residence on October 22, 2010, the government recovered this mutilated passport.  The government seeks to introduce this passport as evidence.

military for the purpose of waging jihad.  When Witness #2 and
the defendant discussed the defendant's enlistment, the defendant
explained to Witness #2 that "war is deception."  The defendant
also discussed a hadith[7] that focused on the use of deception
during jihad.

    D.   <u>Defendant's Email Communications with Anwar Al-Awlaki</u>

      The government seeks to introduce a series of emails
exchanged between the defendant and Anwar Al-Awlaki, a now-
deceased radical preacher and al-Qaeda member.  Awlaki's website,
www.anwar-alawlaki.com, advocated violent jihad against the
United States and its allies.[8]  In these communications, which
began on or before June 12, 2008 (the defendant departed for
Pakistan on June 13, 2008), and continued through January 31,
2009, the defendant requested permission to study under Awlaki,
offered to improve Awlaki's website, and asked Awlaki to post a
fundraising box on his (Awlaki's) website for the "true muslims"
of Palestine.

      The defendant's communications with Awlaki, which took
place before the defendant's trip to Pakistan, and continued for
several months following his return from Pakistan, constitute
important evidence of the defendant's support for violent jihad
against the United States.  This evidence tends to corroborate
the government's other evidence concerning the defendant's motive
for traveling to Pakistan.

    E.   <u>Defendant's Attempt to Travel to Somalia</u>

      The government seeks to introduce evidence that on June
15, 2009, the defendant attempted to travel from Hawaii[9] to
Somalia, the operational headquarters of the violent terrorist

---

[7]   The hadith are narrations concerning the words and deeds of
the Islamic prophet Muhammad.

[8]   At trial, the government intends to call expert witness Evan
Kohlmann to testify as to the background and significance of
certain terrorists and terrorist organizations, including Awlaki,
whom the defendant either communicated with directly, or for whom
the defendant expressed support through his online activities.
The government will provide a report of Kohlmann's expected
expert testimony, pursuant to Fed. R. Crim. P. 16(a)(1)(G).

[9]   The government will prove at trial that on or about April
14, 2009, the defendant traveled from New York to Hawaii.

organization Al-Shabaab.[10]  The defendant's attempt to travel to
Somalia is powerful evidence of the defendant's continued intent
and commitment to joining a jihadist fighting group.

Specifically, the government seeks to introduce
evidence that on June 6, 2009, the defendant purchased an airline
ticket to travel on June 15, 2009, from Maui to Dubai, via
Denver, Colorado, and Washington, D.C.  On or about June 14,
2009, FBI agents met with the defendant.  He advised the agents
that he had purchased tickets to fly the following day.  The
defendant then stated that his ultimate destination was
Mogadishu, Somalia, and that he had also purchased tickets to fly
from Dubai to Mogadishu, via Djibouti.  The agents advised the
defendant that he was placed on the "No Fly" list and would not
be permitted to board his flight.  The following day, the
defendant went to the airport and was informed that he would not
be allowed to board his flight.

III. Legal Analysis

Section 1001(a)(2) prohibits the making of "any
materially false, fictitious or fraudulent statement or
representation" to the executive branch of government.  A
defendant violates Section 1001(a)(2) by "(1) knowingly and
willfully (2) ma[king] a statement, (3) which was false... (4)
which was within the jurisdiction of an agency of the United
States" and which was material.  United States v. Ballistrea, 101
F.3d 827, 834 (2d Cir. 1996).

A.   Direct Evidence

Evidence of uncharged criminal activity is not
considered "other crimes" evidence under Rule 404(b) "if it arose
out of the same transaction or series of transactions as the
charged offense, if it is inextricably intertwined with the
evidence regarding the charged offense, or if it is necessary to
complete the story of the crime on trial."  United States v.
Carboni, 204 F.3d 39, 44 (2d Cir. 2000); see also United States
v. Towne, 870 F.2d 880, 886 (2d Cir. 1989)(holding that evidence

---

[10]   Evan Kohlmann is expected to testify that Al-Shabaab, a U.S.
State Department designated foreign terrorist organization and a
close ally of al-Qaeda in East Africa, is currently engaged in a
terrorist war against the Somali government.  Al-Shabaab's goal
is to overthrow the Somali government and establish Sharia, or
Islamic law, in that country.  Kohlmann will also testify that
Al-Shabaab recruits Westerners to join its ranks through its own
media wing, Al-Kataib.

of uncharged crimes is admissible when it is "inextricably
intertwined" with the narrative of the charged offenses and is
"necessary to complete the story of the crime on trial.").

        Here, the defendant is charged with making false
statements regarding his purpose for traveling to Pakistan,
specifically, (1) that he traveled to Pakistan to attend a school
and a wedding, and (2) that he did not travel to Pakistan in
order to join a jihadist fighting group.  Therefore, an element
of the charged offenses that the government must prove at trial
is that the defendant's true purpose and intent for traveling to
Pakistan was to join a jihadist fighting group.  Accordingly,
evidence of the defendant's support for and interest in jihadist
fighting groups, as discussed above, is admissible as necessary
to complete the story of the crime on trial.  This evidence is
highly probative direct evidence of the defendant's true purpose
for traveling to Pakistan, and proves that the defendant is
guilty of the false statement charges against him.

        B.    404(b) Evidence

        The Court has broad discretion to admit "other act"
evidence under Rule 404(b), see United States v. Myerson, 182
F.3d 153, 162 (2d Cir. 1994); United States v. Sappe, 898 F.2d
878, 880 (2d Cir. 1990), and should follow the "inclusionary"
approach to "other act" evidence, see United States v. Guang, 511
F.3d 110, 121 (2d Cir. 2007); United States v. Harris, 733 F.2d
994, 1006 (2d Cir. 1984).  Thus, evidence of a defendant's prior
bad acts is admissible under Rule 404(b), subject to the
limitations of Rule 403, if that evidence is offered for "any
purpose other than to show a defendant's criminal propensity."
United States v. Rouhani, 47 F.3d 539, 544 (2d Cir. 1995);  see
Guang, 511 F.3d at 121; United States v. Inserra, 34 F.3d 83, 89
(2d Cir. 1994) (under Rule 404(b), evidence offered for a proper
purpose should be admitted unless it is unfairly prejudicial);
United States v. Mickens, 926 F.2d 1323, 1328 (2d Cir. 1991)
(same); United States v. Colon, 880 F.2d 650, 656 (2d Cir. 1989)
(same).

        In deciding whether to admit evidence of uncharged
crimes under Rule 404(b), the Court must: (i) determine whether
admission of the evidence is offered for a proper purpose; (ii)
determine whether the evidence is relevant to an issue in the
case; (iii) determine whether or not the probative value of the
evidence is substantially outweighed by the prejudicial impact;
and (iv) give a limiting instruction if one is requested by the
defense.  See United States v. Huddleston, 485 U.S. 681, 691-92
(1988).

1.   <u>The Evidence Is Offered for a Proper Purpose</u>

Rule 404(b) provides a non-exhaustive list of purposes for which evidence of other crimes may be admitted, including "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Fed. R. Evid. 404(b).  In the instant case, the evidence identified above is offered for the proper purposes of motive, intent, preparation and planning.

Here, evidence of the defendant's pro-jihadist activities publicly posted on the internet, electronic evidence recovered from the defendant's New York computers, and evidence of the defendant's continuing pro-jihadist activities after he moved to Hawaii in April 2009, including his attempt to travel to Somalia, the operational headquarters for Al-Shabaab, all constitute direct evidence of the defendant's intent, motive, preparation and planning to fight jihad.

Similarly, evidence of the defendant's numerous email exchanges with Awlaki, and evidence that less than four months after attempting to enter Pakistan, the defendant attempted to join the U.S. Army under false pretenses in order to be deployed to Iraq and then defect to fight against U.S. troops, proves that the defendant's intent and motive for traveling to Pakistan was to join a jihadist fighting group.  In addition, the fact that the defendant attempted to join the United States Army contradicts the defendant's purported reason for traveling to Pakistan, to attend school, which he presumably could have done outside of Pakistan.

2.   <u>The Evidence Is Relevant to an Issue in the Case</u>

Rule 401 of the Federal Rules of Evidence requires that, to be admitted, evidence must be relevant.  "Relevant" evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be withoutthe evidence."  Fed. R. Evid. 401.  Evidence of an uncharged crime, which is admitted for a proper purpose, is relevant so long as "the jury could reasonably find by a preponderance of the evidence that the act occurred and that the defendant committed the act."  <u>United States v. Ramirez</u>, 894 F.2d 565, 569 (2d Cir. 1990) (citations omitted).

As set forth above, the evidence is offered for proper purposes, to prove that the defendant went to Pakistan to join a jihadist fighting group.  Moreover, because the evidence takes

the form of the defendant's own statements, emails and web
postings, forensic evidence seized from the defendant's
computers, and testimony from witnesses with firsthand knowledge
of the defendant's actions, it cannot be disputed that a jury
could reasonably find that the defendant made the statements and
committed the acts.

        3.    The Probative Value of the Evidence Is Not
              Substantially Outweighed by Any Prejudicial Impact

      In this case, the danger of <u>unfair</u> prejudice does not
outweigh the probative value of the proffered evidence.  The fact
that evidence is incriminating does not mean it is unfairly
prejudicial.  Rather, the touchstone for unfair prejudice is the
extent to which the evidence creates a risk of conviction based
on a propensity finding.  "The term 'unfair prejudice,' as to a
criminal defendant, speaks to the capacity of some concededly
relevant evidence to lure the fact finder into declaring guilt on
a ground different from the proof specific to the offense
charged."  <u>Old Chief v. United States</u>, 519 U.S. 172, 180 (1997).
Put another way, "the prejudice must be unfair in the sense that
it could unduly inflame the passion of the jury, confuse the
issues before the jury, or inappropriately lead the jury to
convict on the basis of conduct not at issue in the trial."
<u>United States v. Quattrone</u>, 441 F.3d 153, 186 (2d Cir. 2006); <u>see</u>
<u>United States v. Matera</u>, 489 F.3d 115, 120 (2d Cir. 2007)
(recognizing that "[w]hen a defendant engages in a criminal
enterprise which includes very serious crimes," 404(b) evidence
can "be of important probative value in proving the enterprise").

      The defendant's online and in-person communications in
support of jihad are not more serious than the conduct underlying
the charges currently faced by the defendant: traveling to
Pakistan to join a jihadist fighting group.  <u>See</u> <u>United States v.</u>
<u>Williams</u>, 205 F.3d 23, 33-34 (2d Cir. 2000) (Rule 403 analysis
favors admission where uncharged crimes "did not involve conduct
more serious than the charged crime[s] and the district court
gave a proper limiting instruction").  The activities described
above that the government seeks to introduce pursuant to Fed. R.
Evid. 404(b) are no more serious than the expected testimony of
Witness #1 and Witness #2, or the defendant's own admissions,
that the defendant intended to travel to Pakistan to wage jihad
against U.S. troops.

      Additionally, the proof of the uncharged acts the
government seeks to admit will come from many of the same
witnesses who will testify against the defendant regarding the
charged offenses, specifically Witness #1, Witness #2, and the

federal law enforcement agents who handled the investigation into the defendant's criminal conduct, together with a small amount of independent corroboration and the testimony of a computer forensics analyst.  Where uncharged acts are no more serious than the charged offenses and are based on the same proof, there is little danger that any prejudice will flow from the admission of evidence of the uncharged offenses.  See United States v. Mejia-Velez, 855 F. Supp. 607, 611 (E.D.N.Y. 1994) (Korman, J.) ("If the jury found these witnesses to be credible, the defendant[s] would be convicted even if the accomplices were not permitted to testify about [the uncharged crimes].").  Thus, this is not a situation where the tail of the uncharged crimes is "wagging the dog" of the charged ones.  United States v. Ferrer- Cruz, 899 F.2d 135, 141 (1st Cir. 1990) (Torruella, J., dissenting).  Rather, the uncharged acts are a limited and discrete way of explaining the defendant's true motive and intent for traveling to Pakistan, and his ongoing preparation and planning to wage jihad, without creating the risk of conviction based on inflammatory or extensive "other act" evidence.  Thus, the Court should admit this evidence.

In sum, the probative value of the evidence of the uncharged crimes described below is not substantially outweighed by the resulting danger of unfair prejudice.  Consequently, the Court should admit this evidence pursuant to Rule 404(b).

IV.  Conclusion

For the reasons set forth above, the government respectfully moves to admit the above-described evidence as direct evidence of the charged offenses or, alternatively, pursuant to Rule 404(b) of the Federal Rules of Evidence as evidence of the defendant's motive, intent, preparation and planning to join a jihadist fighting group.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney


By:  __/s/ Ali Kazemi_____
James P. Loonam
Ali Kazemi
Assistant U.S. Attorneys
(718) 254-7520/6171


cc:  Frederick Cohn, Esq. (Via ECF and Email)