UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X

UNITED STATES OF AMERICA

    -v-

                             **10-CR-1020 (ENV-1)**

ABDEL HAMEED SHEHADEH,

          Defendant.

-----------------------------------------------------X


## DEFENDANT'S MEMORANDUM IN SUPPORT OF THE MOTION TO CONTROVERT THE WARRANT AND IN OPPOSITION TO THE GOVERNMENT'S MOTION IN LIMINE

### Statement of the case

The Defendant was arrested in Hawaii on October 24, 2010. His case has been pending before this Court since his arraignment here.  A motion to suppress post arrest statements is pending.[1]

On February 8, 2012, Magistrate Judge Viktor V. Pohoreslky issued search warrants authorizing seizure of electronic files contained in two computers. At that time, the Government seized the hard drive (containing electronic information) of a third computer, relying not on a warrant, but on a consent to search agreed to by

---

[1]References may be made to the record and submissions for that motion. Said References will be denoted (S-with specific reference to the document referred to). References to the record of the Suppression hearing will be denoted (SR-p)

1

the mother of the defendant who had no ownership or control over that computer except for the fact that it was in her home, a home that had been shared with her son.

The defense was advised of the existence of the warrant and the searches conducted under it on March 12, 2012.  At the same time the Government filed its motion in limine seeking to admit evidence which, if not obtained from the search, shed light on the reason for the search. Reference will be made to that motion in this portion of the memorandum. The applicability of The Federal Rules of Evidence to that motion and the admissibility of the evidence the Government seeks to introduce at trial will be dealt with in a separate part of this memorandum.

The memorandum, therefore, is in support of the Defendant's position on a motion to controvert the warrants and suppress the fruits of the search "authorized" by the consent of the defendant's mother. It opposes certain evidence that the Government seeks to admit at trial.

### The Charges

The defendant is charged in a three count indictment with three counts of making a material misstatement to the FBI involving terrorism (18 U.S.C. 1001 (A)(2)). He is not charged with Providing Material Support or resources to

designated foreign terrorist organizations (18 U.S.C. 2339(B))[2]. The pending

charges are the same as those for which he was arrested.

The search Warrants

The warrants are for search of the hard drives of the computers that were

seized (Exhibit A and B), in other words the electronic content.  The affidavit in

support (Exhibit C) alleges that this is the crime investigated. The affidavit,

however, seeks evidence of conduct which, if they were any crime at all, was not

evidence of lying to the FBI but of something else.

The affidavit is full of irrelevancies:

-A trip to Israel to visit relatives.

-A trip to Pakistan where he was searched after he had boarded the plane and
interviewed by the FBI. (No contraband was found.) The FBI allowed him to
continue his flight but asked Pakistan to reject his entry and return him  the
United States.

-Statements that he was the creator and administrator of web sites that the
affiant concluded, without example, "advocated violent jihad" against the
West (Affidavit ¶ 8, Page 5).[3]

-One of the Web sites contained a hyperlink to the web page www.anwar-

_____

[2]Although it is not charged, the affidavit in support of the search warrants alleges a
misrepresentation to a recruiting Sargent in the United States Army. Because it bears on the issue
of particularity of the warrants, we treat it here as if it were charged for the purposes of the
analysis.

[3]Print outs of the web sites are attached. The mischaracterization of their content raises
issues falsity under *Franks v. Delaware*.

3

alawlaki.com.[4]

-Posting of a Video including a recording titled: "Benefits of Jihad in Our Times." Nothing in the record indicates that the electronic information was actually viewed by the Magistrate Judge.

-A quotation exhorting Muslims to "start practicing [our] freedom of speech (Affidavit page 8). "There are many brothers and sisters in America that are ready to speak up. They just need a push." *ibid*

Other allegations allegedly giving rise to probable cause to believe that

there was evidence supporting a prosecution for lying to the FBI are:

-A visit to a gun club in Hawaii (Affidavit p. 10).

-An attempt to get a witness to go to Yemen to learn Arabic "on the battlefield."

## POINT I

## THERE WAS NO PROBABLE CAUSE FOR THE ISSUANCE OF THE WARRANTS

The computers in question were  seized in Hawaii from an apartment

occupied by the defendant and paid for by the FBI through an agent pretending to

be Shehadeh's employer (See Affidavit p. 17). That seizure was pursuant to a

warrant obtained from a magistrate judge in the District of Hawaii on an affidavit

---

[4] Al-Awlaki is alleged to have been an Al Qaeda leader advocating violent jihad against the United States and it's allies. He was an American Citizen later killed by an American Drone strike in Yemen. At the time of Shehadeh's published hyperlink, Al-Awlaki had not been declared a terrorist. Access to his Web page was a perfectly legal expression of the First Amendment to the United States Constitution.

virtually identical to the affidavit for the searches discussed herein. The arguments set forth in regard to the warrants issued in this district apply here as well.[5]

The lack of probable cause is a result of the allegations that the computer contained evidence of a crime, without adequately identifying the crime that was being referred to, and that there was a material misstatement of fact in the affidavit which was either knowingly false or recklessly put forward as true without which the magistrate judge would not have signed the warrant. *Franks v. Delaware*, 438 U.S. 154 , 98 S.Ct. 2674 (1978).

A search warrant will not issue unless there is probable cause to believe that there will be found either contraband or evidence of a crime. *Illinois v. Gates*, 46 U.S. 213,236 (1983), *United States v. Rosa*, 11F.3d 315,326 (2d Cir. 1983).

Clearly all that is relevant for this analysis is whether or not there was evidence of the crime at issue. It may not be any old crime, but must be evidence of the crime of lying to the FBI. See *United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992), *United States v. Bianco*, 998 F2d 1112, 1116 (2d Cir 1993).

Little of the activity attributed to Mr. Shehadeh directly addresses lying. There are allegations by witnesses that he made certain admissions (attached pp. 12-14), but those witnesses fail to meet the tests of reliability mandated by *Aguilar*

---

[5]The existence of the District of Hawaii warrant has just come to light.

*v. Texas,* 378 U.S. 108, 84 S. Ct. 1509, and ***Spinelli v. United States***, 393 U.S. 410, 89 S. Ct. 584. The best that can be said is that the other allegations, of conduct on the internet, might, if true, support the claim of falsity in that it was belied by what appeared to be contradictory behavior.

The Government will undoubtedly argue that a propensity for espousing violence as a means to achieving his religious goals would give some credence to the idea that he was going to Pakistan, not to attend a wedding and seek a religious school (madrasa), but in fact to seek training and then to join some terrorist faction so that he could engage in jihad in the Wahabi model, killing Americans or Westerners in general who had in someway, as a culture, transgressed against the word of Allah as he heard it.

This would be plausible were it not for the fact that the content of his communications were misrepresented to the magistrate judge. First, the Court should recognize that a discerning magistrate judge, faced with allegations of perusal of "terrorist" web sites, might ask whether there were innocent reasons for doing so. Was the subject innocently trying to come to a position that he had not yet embraced, either for peace or war?  Was he trying to understand the extremists so that he could marshal arguments against them? Did he merely have an academic interest?

6

Once, however, the web sites he posted are identified by the FBI declarant as espousing violence, everything else falls into place and, with due respect, the magistrate loses objectivity and instead endorses the FBI's representations. This is despite the fact that the allegations of the conduct were not in themselves criminal, nor could they be, as the communications with people later declared to be terrorists were perfectly legal at the time.[6]

Nowhere in the affidavit is the "evidence of a crime" identified as violation of 18 U.S.C. 1001. Instead the evidence of criminality was, *sub silencio*, violation of 18 U.S.C. 2339B.

### Franks violation

The FBI declarant said in his affidavit that he "learned that SHEHADEH was the creator and administrator of multiple web sites which advocated violent jihad against the West" (Affidavit p. 5). It is this artful formulation that should make the Court suspect that it was not mere negligence that promoted this misstatement, but that it was a method designed to allow him to disclaim malicious intent or recklessness. "Your honor, I should have read it but I didn't. I relied on what other people told me."

Without this bald misstatement of the content of the postings the magistrate

---

[6]We address this issue further in response to the Government's motion *in limine* (Infra).

judge might well have declined to issue the warrant. The evidence gleaned from

the search of the two computers seized in Hawaii should be suppressed.


### POINT II

### DEFENDANT'S MOTHER HAD NO AUTHORITY TO CONSENT TO THE SEARCH OF THE DEFENDANT'S LAPTOP

A third computer was searched. The affidavit bears quoting.

On or about April 17,2009, Mirvat Shehadeh (defendants mother) contacted agents from the FBI  JTTF and informed them that she had found SHEHADEH'S laptop computer, to wit. Agents traveled to the STATEN ISLAND RESIDENCE, and Mirvat Shehadeh provided written consent for the agents to create a mirror image of the hard drive contained in SHEHADEH'S laptop computer, to wit: a Toshiba Satellite laptop computer, serial number 98085678W(TOSHIBA  LAP TOP) (Affidavit p. 16) (Capitalization in the original).

The Government's affidavit is remarkable, asserting a right to search the

defendant's laptop, while admitting that the laptop was intended for and in fact

was for the exclusive use of the defendant. Consent to search can only be given be

someone who has common authority over premises or effects. *United States v.

Matlock*, 415 U.S. 164, 170, 94 S.Ct  988, 993 (1974). Faced with this clear

statement of the law, the Government then asserts, without any factual

underpinning at all, that Mr. Shehadeh had abandoned the laptop.

Rather than speculate as to what the Government had in mind when they

8

made this assertion, we await their response. In the absence of an adequate justification, made under oath, we respectfully submit that the contents of the third computer must be suppressed.

## POINT III

### THE GOVERNMENT'S PROPOSED RULE 404(B) EVIDENCE IS AN OPEN INVITATION TO JURY BIAS

The Government's motion *in limine* seeks to introduce various matters as evidence which it would qualify under Rule 404(b) of the Federal rules of evidence.  We address them seriatim *infra* but they must be set in context first as we maintain that, even if they are relevant within the meaning of the rule, they should be disallowed.

This is a terrorism case in which the government invested over a year of "investigative" time  and resources seeking evidence of terrorist activities. Despite use of techniques barred from discussion here because of their classified nature but which pretty much had the defendant under observation 24/7, the Government was unable to charge him with a crime of actual terrorism or assistance to terrorists. This prosecution for lying to the FBI is the consolation prize.

Undeterred by its failure, the Government seeks to turn this into a real

9

terrorism trial by cynically offering evidence of non crimes but "bad conduct" in order to infect the jury with the inevitable repugnance of association with an "avowed terrorist," and investigation by the defendant into their ideas, if not the adoption of them.

We believe that they have little probative value and that the government has no real need of this evidence. The Government, in its filings, boast of at least two witnesses who have direct evidence that the defendant's profession of the reason he was going to Pakistan, was a lie. The Government plans to introduce the defendant's pre-arrest statements to the FBI. No motion to suppress has been filed to oppose the submission of those statements if they are otherwise deemed relevant. The Government's theory of relevancy here seems to be that these other activities are evidence of motive to lie. We suggest that their probative value is minute and their prejudicial value is gargantuan. As the Second Circuit quoted with approval in discussing the undue prejudice that can result when the "minute peg of relevancy [is] entirely obscured by the dirty linen hung upon it" ***United States v. Williams***, 585 F.3d 703,708 (2nd Cir 2009) (bracketed material in the original.), so it is here.[7]

---

[7]There is little doubt that the government will argue that whatever the minuscule value of the proffered evidence on the issue of whether the defendant lied, when it comes to the three year enhancement for the involvement of international or domestic terrorism, some, or all of the

Nor can the Court rely on it's ability to salvage the situation with a limiting charge to the jury. A presumption that this will suffice fails where there is an "overwhelming probability that the jury will be unable to follow the court's instructions and the evidence is devastating to the defense." *ibid* p709 citing ***United Statess v. Columbo*** 909 F.2d 715 (2d Cir. 1990). This analysis should be applied to each of the Government's offerings listed below:

**On April 16, 2009, the FBI executed a consent search of the defendant's home computer in Staten Island, an HP Pavilion desktop computer. Forensic analysis of the hard drive of the desktop computer revealed Google searches on or before June 2, 2008 for the following words and phrases:**

**al qaeda**
**baitullah mehsud**
**bin laden**
**fata**

---

proffered material has a greater probative value.

That sentencing enhancement (18 U.S.C. 1001(a)) requires a jury finding beyond a reasonable doubt. That must be argued to the jury in the alternative. "The government cannot prove my client lied beyond a reasonable doubt but, if you find that the government has met this burden, it was not in aid of terrorism."

This causes a great burden on the defense. Argument in the alternative is not recommended by the great trial tacticians. The necessity of employing the tactic offers a partial solution to the evidentiary problems and a fair solution by the Court. Bifurcate the trial into a "guilt phase" and a "penalty phase" as we would in a death penalty trial (18 U.S.C. 3593(b)).

There appear to be no cases commenting on a suggestion like this although in a number of cases, non death penalty defendants have participated in the guilt phase of capital trials. See, for example, ***Buchanan v. Kentucky***, 483 U.S. 402 (1996). There is nothing in the Federal rules of Procedure forbidding this practice and here, as in a capital case, the evidence of the guilt phase carries over into the penalty phase. It benefits the decisions that have to be made by defense counsel as to trial tactics and argument to the jury, and allows the court to analyze the prosecutions proffered 404(b) evidence from a more precise perspective. The additional trial time would be negligible.

**south waziristan pakistan**
**taliban**

    This material would serve a legitimate purpose in most circumstances where persons are either serious about current events and wish to check sources for accuracy or nuance or for academics or scholars . We respectfully suggest that these searches, probably in more sophisticated form, would be found on thousands of computers of police agencies, intelligence analysts, and academics who are engaged in the pursuit of information about Islamists of all stripes. Mr. Shehadeh's purpose might be no different. The names themselves will generate visceral negative reaction in the jurors.

    **On February 8, 2012, the FBI executed a criminal search warrant on a mirror image of the hard drive of the defendant's Toshiba Satellite laptop computer. Forensic analysis of the hard drive of the laptop computer revealed a link on his computer, accessed on or before February 8, 2009, to a file entitled "44 Ways of Supporting Jihad. Inc." Evan Kohlmann is expected to testify at trial that "44 Ways of Supporting Jihad" is a sermon in which Anwar Al-Awlaki encourages others to fight violent jihad.**

    The mere fact of a link on the computer is no evidence of anything important. A search of my computer might find links to addresses by Mitt Romney. A presumption that I would vote for him is probably unwarranted. We killed Anwar Al-Awlaki and at least half the jurors will remember it. We respectfully suggest that the link, of such minuscule value, would boot strap the Government's implicit argument that Shehadeh is not merely a liar to a government agency, he is a terrorist act waiting to happen.

    **The government seeks to introduce evidence that on October 3, 2008, the defendant attempted to join the United States Army under false pretenses, and lied to an Army recruiter and federal law enforcement authorities in connection with his attempted enlistment.**

    The Government, in connection to this evidence, is likely to seek to introduce evidence that the defendant intended to commit treason (See Government's letter to the Court dated March 12, 2012, section II(C)(3)). The evidence of the enlistment and the lies attendant to it are relatively benign, any

attempt to link it to other intended crimes should be closely monitored.

**The government will introduce evidence that the defendant lied to an Army recruiter when he stated that he had only traveled outside of the United States on one occasion, to Israel, by failing to disclose that he had traveled to Pakistan and had been denied entry by the Pakistani government. To corroborate his travel history, the defendant showed the recruiter an expired passport with an Israeli stamp. This passport did not contain the defendant's Pakistani visa.**

The fact that the defendant knew that his travel to the Middle East and Pakistan would raise a red flag to a recruiter whose applicant had a Muslim name should not be a surprise. Again, that evidence should not be linked to any other inchoate crime. (See *infra*)

**The government will introduce evidence that on October 20, 2008, the defendant was interviewed by federal law enforcement authorities, at which time he stated that he had a problem with his Army enlistment because he had not disclosed his travel to Pakistan. When an FBI agent examined the defendant's passport, he observed, and the defendant confirmed, that he had ripped out the Pakistani visa for his June 13, 2008 travel.**

See above.

### Defendant's Email Communications with Anwar Al-Awlaki

Our argument that connection with a person not then declared a terrorist is just as true here. The E-mails in question have no overt references to violence at all. That Al-Awlaki, an American citizen and Islamist theorist, should be of interest to a young Muslim trying to define himself and his community is of little evidentiary value.

**The government seeks to introduce evidence that on June 15, 2009, the defendant attempted to travel from Hawaii to Somalia, the operational headquarters of the violent terrorist organization Al-Shabbab.**

While curiosity killed the cat, it should not be used as a vehicle to send a

13

young man to ADMAX. There are no links between Somalia and training camps. Perhaps Mr. Shehadeh wanted to become a pirate. We apologize for the irony, but after all, when an argument is ridiculous, the opportunity to make fun of it should not be denied.

There is no doubt that the government's otherwise strong case would be bolstered by the evidence it would like to offer. The issue is, will it be bolstered by reason or by prejudice?  We respectfully suggest the latter. The government's motion *in limine* should be denied.

Respectfully submitted

Frederick H. Cohn
Attorney for the defendant
111 Broadway
Suite 1805
New York, NY 10006
212-768-1110

14