

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JPL:AK
F.#2008R01056

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

May 21, 2012

<u>Via ECF and Hand</u>

Honorable Eric N. Vitaliano
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

          Re:  United States v. Abdel Hameed Shehadeh
               <u>Criminal Docket No. 10-1020 (ENV)</u>

Dear Judge Vitaliano:

          By memorandum filed April 17, 2012, the defendant moved
to suppress electronic evidence (1) obtained from the defendant's
two laptop computers in Hawaii, on the basis that there was no
probable cause to support the issuance of the search warrant; and
(2) obtained from the defendant's laptop computer in New York, on
the basis that consent to search the computer was not validly
obtained from the defendant's mother.  <u>See</u> Def. Mem. at 4-8.  The
defendant also moved to bifurcate his trial into a guilt and
penalty phase, due to the three-year "sentencing enhancement" set
forth in 18 U.S.C. § 1001 because the charged offenses involve
international or domestic terrorism.  <u>See</u> Def. Mem. at 11 n.7.
Finally, the defendant opposed the government's March 12, 2012
motion <u>in limine</u> to admit at trial as direct evidence of the
charged offenses or, alternatively, pursuant to Rule 404(b) of
the Federal Rules of Evidence, evidence of the defendant's
motive, intent, preparation and planning to join a jihadist
fighting group.  <u>See</u> Def. Mem. at 8-14.

          For the reasons set forth below, the defendant's
motions to suppress the electronic evidence, and bifurcate his
trial, should be denied, and the government's March 12, 2012
motion <u>in limine</u> should be granted.

I.    The Defendant's Motion to Suppress the
      <u>Electronic Evidence Should Be Denied</u>

          On January 25, 2012, the Honorable Viktor V. Pohorelsky
issued two warrants to search three of the defendant's computers.
The probable cause supporting both warrants was set forth in an

affidavit dated January 25, 2012, attached hereto as Exhibit A[1] (hereinafter the "January 25, 2012 Affidavit").  One warrant authorized the search of two laptop computers seized from the defendant's residence in Hawaii on November 5, 2010.  An additional warrant authorized the search of an "image," or copy, of a Toshiba Satellite laptop computer[2], that was obtained at the defendant's New York residence on April 17, 2009 pursuant to written consent provided by the defendant's mother (hereinafter the "New York Hard Drive[3]").

        Forensic analysis of the New York Hard Drive revealed a digital file, accessed on or before February 8, 2009, entitled "44 Ways of Supporting Jihad.lnk."  This file is currently the only electronic evidence seized pursuant to the above-referenced warrants that the government seeks to introduce at trial.  <u>See</u> 3/12/12 Mot. in Lim. at 5.  As set forth in the government's motion, expert Evan Kohlmann is expected to testify at trial that "44 Ways of Supporting Jihad" is a sermon in which former al-Qaeda leader Anwar Al-Awlaki encourages others to fight violent jihad.  <u>See id</u>.

    A.    The Defendant's Motion to Suppress Evidence Obtained
        <u>From His Two Laptop Computers in Hawaii is Moot</u>

        The defendant moves to suppress evidence seized from his two laptop computers in Hawaii, on the basis that the warrant authorizing the search of those computers was not supported by

---

[1]    Because Exhibits A through D referenced herein contain sensitive information with respect to the defendant's mother, the government requests that they be filed separately under seal.

[2]    Evidence that the defendant was the user of the laptop includes a Best Buy receipt for the Toshiba laptop, paid for with a debit card issued to "Abdel H Shehadeh."  This receipt was recovered on April 16, 2009, from a room in the defendant's mother's residence, that was shared by the defendant and two juvenile siblings.  The room was searched pursuant to written consent provided by the defendant's mother, that is attached hereto as Exhibit B.

[3]    The New York Hard Drive is referred to in the January 25, 2012 affidavit as "ONE WESTERN DIGITAL 750 GIGABYTE HARD DRIVE, SERIAL NUMBER WCAU40349797, CONTAINING A DIGITAL IMAGE OF A HITACHI HARD DRIVE, SERIAL NUMBER 080821BB6F00WDK41ZUG, LOCATED WITHIN A TOSHIBA SATELLITE LAPTOP COMPUTER, SERIAL NUMBER 98085678W."

probable cause.  <u>See</u> Def. Mem. at 5, 8.  The government strongly disagrees; there was probable cause to search the defendant's two laptop computers in Hawaii.  However, because the government does not seek to introduce any evidence seized from the laptop computers in Hawaii, the defendant's motion to suppress with respect to those computers is moot.[4]

    B.    The Defendant's Motion to Suppress Evidence Obtained
        <u>From the New York Hard Drive Should Be Denied</u>

     The defendant moves to suppress evidence obtained from the New York Hard Drive, on the basis that the defendant's mother did not have authority to provide consent for agents to search his Toshiba laptop computer.  <u>See</u> Def. Mem. at 7-8.  The defendant's argument is mistaken with respect to a matter of fact.

     The government did not conduct a search of the Toshiba laptop computer pursuant to the defendant's mother's consent.  Rather, the government created an image of that computer's hard drive, referred to herein as the New York Hard Drive, pursuant to the defendant's mother's consent, on April 17, 2009.  <u>See</u> January 25, 2012 Affidavit, ¶ 34.  Agents later conducted a search of the New York Hard Drive pursuant to a Rule 41 warrant issued on January 25, 2012.[5]  The affidavit in support of the warrant described for the court how the government obtained an image of the laptop hard drive.  <u>See id.</u>, ¶¶ 34-35.

     The defendant contends that the affidavit in support of the search warrant for the New York Hard Drive lacks probable cause.[6]  Specifically, he claims that the "lack of probable cause

---

[4]    Copies of the warrant authorizing the search of the two computers seized in Hawaii, and the affidavit in support of the warrants, are attached as Exhibits A and C to the defendant's motion.

[5]    Copies of the warrant authorizing the search of the New York Hard Drive, and the affidavit in support of the warrant, are attached as Exhibits B and C to the defendant's motion.

[6]    The defendant challenges the probable cause set forth in the search warrant affidavit in the context of his motion to suppress the fruits of the Hawaii search warrant.  As discussed above, that issue is moot.  However, the defendant's probable cause challenge would apply equally to the search of the New York Hard Drive, as both the Hawaii and New York searches were issued based

is a result of the allegations that the computer contained evidence of a crime, without adequately identifying the crime that was being referred to," and he further contends that "there was a material misstatement of fact in the affidavit," see Def. Mem. at 5.

For the reasons set forth below, the defendant's motion to suppress evidence seized from the New York Hard Drive should be denied in its entirety because: (1) the affidavit clearly identified the crime being investigated; (2) the defendant abandoned his laptop in New York; (3) the agents acted reasonably in creating an image of the laptop; (4) the warrant was amply supported by probable cause; and (5) the agents relied upon the judge's issuance of the warrant and executed it in good faith.

> 1.   The Warrant Clearly Identified
>      the Crime Being Investigated

The defendant contends that the warrant did not adequately identify the crime being investigated.  See Def. Mem. at 5.  The defendant is mistaken.  The warrant affidavit clearly states that there is probable cause to believe that the premises described will contain "evidence, fruits and instrumentalities of the crime of making materially false, fictitious and fraudulent statements and representations, in a matter involving international and domestic terrorism, within the jurisdiction of the executive branch of the Government of the United States, in violation of Title 18, United States Code, Section 1001(a)(2)." See January 25, 2012 Aff. at 2; see also id. at ¶ 51 (stating that the defendant's laptop "is thus likely to contain evidence, fruits and instrumentalities of violations of federal law, including making material false statements in violation of 18 U.S.C. § 1001.").  Additionally, the warrant itself states on its face that the premises will contain "[e]vidence, fruits and instrumentalities of violations of Title 18, United States Code, Section 1001."  See Attachment B, at 1.

> 2.   The Defendant Abandoned His Laptop Computer

The defendant argues that the government "asserts, without any factual underpinning at all, that [the defendant] had abandoned the laptop.  Rather than speculate as to what the Government had in mind when they made this assertion, we await their response."  See Def. Mem. at 8-9.  As set forth below, the

---

on the same search warrant affidavit.  Accordingly, the government addresses those arguments herein.

facts clearly established that the defendant abandoned his laptop computer in New York and, accordingly, the defendant did not retain a Fourth Amendment privacy interest in the computer.

a.   <u>Applicable Law</u>

One well-recognized exception to the Fourth Amendment's warrant requirement applies to property that has been abandoned prior to a search.  It is well established that a warrantless seizure of abandoned property does not violate the Fourth Amendment because the act of abandonment constitutes a forfeiture of any reasonable expectation of privacy in the property.  <u>See</u> <u>United States v. Springer</u>, 946 F.2d 1012, 1017 (2d Cir. 1991) (citing <u>Abel v. United States</u>, 362 U.S. 217, 241 (1960)).  Thus, even in the absence of a warrant and probable cause, a search of property that has been abandoned does not violate a privacy interest.  <u>See</u>, <u>e.g.</u>, <u>United States v. Torres</u>, 949 F.2d 606, 608 (2d Cir. 1991) (no expectation of privacy in shoulder bag where defendant disclaimed ownership of bag and knowledge of its contents); <u>United States v. Lee</u>, 916 F.2d 814, 818 (2d Cir. 1990) (defendant's repeated statements disavowing ownership of suitcase constituted abandonment, thereby forfeiting any legitimate expectation of privacy); <u>cf</u>. <u>Abel</u>, 362 U.S. at 241 (no reasonable expectation of privacy in articles left in a hotel room after rental period has expired); <u>United States v. Rahme</u>, 813 F.2d 31, 34-35 (2d Cir. 1987) (same).

To determine whether property has been abandoned, a court must focus on the intent of the person who is alleged to have abandoned the property.  <u>Lee</u>, 916 F.2d at 818.  "Intent may be inferred from words spoken, acts done, and other objective facts."  <u>Id</u>. (internal quotation marks and citation omitted).  "Abandonment is a question of fact, to be decided in objective terms on the basis of all the relevant facts and circumstances, and not on the basis of leasehold interests or other property rights."  <u>United States v. Levasseur</u>, 816 F.2d 37, 44 (2d Cir. 1987).  The facts and circumstances pertinent to the court's abandonment inquiry are not limited to those which were known to agents at the time of the search or seizure.  <u>Id</u>.  Rather, subsequently discovered events may support an inference that the defendant had already chosen, and manifested his decision, not to return to the property.  <u>Id</u>.  The government bears the burden of proving abandonment by a preponderance of the evidence.  <u>See</u> <u>United States v. Matlock</u>, 415 U.S. 164, 177 n. 14 (1974); <u>United States v. Bulluck</u>, 2010 WL 1948591, *7 (S.D.N.Y. May 13, 2010).

b.  <u>Application</u>

The facts in this case clearly establish that the defendant had abandoned any privacy interest in his Toshiba laptop computer.  On April 14, 2009, the defendant purchased a one-way ticket with cash to travel the same day from JFK Airport to Honolulu, Hawaii.  <u>See</u> January 25, 2012 Affidavit, ¶ 30.  On April 16, 2009, the defendant's mother, completely unaware of the defendant's whereabouts, contacted agents from the FBI Joint Terrorism Task Force ("JTTF"), in order to report that her son was missing.  <u>See</u> <u>id</u>., ¶ 31.  Later that day, JTTF agents arrived at the defendant's mother's residence and, in furtherance of efforts to locate the defendant, they obtained written consent, dated April 16, 2009, to create a digital copy of an HP Pavilion Desktop Computer.  <u>See</u> <u>id</u>.  The following day, the defendant's mother again contacted JTTF agents and informed them that she had found the defendant's Toshiba Satellite laptop computer.  The JTTF agents then returned to the defendant's mother's residence and created a mirror image of the hard drive contained in the laptop computer, pursuant to the defendant's mother's written consent.  <u>See</u> <u>id</u>., ¶ 34.  Attached hereto as Exhibit C is a copy of the defendant's mother's written consent.

Critically, during this initial time period when the defendant traveled to Hawaii, he chose not to inform his mother of his whereabouts, and he additionally chose to leave his laptop computer behind at his mother's residence, rather than bring it with him to Hawaii.  The defendant's mother had possession and control of the computer when she gave consent for the agents to copy it.

Furthermore, on June 6, 2009, the defendant purchased a ticket to travel on June 15, 2009, from Maui to Dubai.  On June 14, 2009, FBI agents met with the defendant, who advised that he had purchased tickets to fly the following day.  He stated that his ultimate destination was Mogadishu, Somalia, and that he had also purchased tickets to fly from Dubai to Mogadishu, via Djibouti.  The agents advised the defendant that he was placed on the "No Fly" list and would not be permitted to board his flight.  Nevertheless, the defendant went to the airport the following day and was informed that he would not be allowed to board his flight.  <u>See</u> January 25, 2012 Affidavit, ¶ 37.

Although the defendant could have obtained his laptop computer from his mother prior to his planned travel to Somalia by, <u>inter alia</u>, requesting that it be shipped to him from New York, the defendant chose not to do so.  Rather, the facts establish that the defendant fled New York, without informing his

6

family of his travel plans, using a one-way ticket to travel to
Hawaii.  Then, nearly two months later, he purchased a one-way
ticket to travel from Hawaii to Somalia, where the al-Qaeda
affiliated terrorist group al-Shabaab engaged in a war against
the Somali government.[7]  During this entire time period, the
defendant left his laptop computer behind at his mother's
residence, and did not attempt to recover it.  In sum, given the
defendant's conduct during the nearly two-month period following
his departure from New York, see Levasseur, 816 F.2d at 44, it is
clear that the defendant had abandoned his laptop computer and,
accordingly, he retained no Fourth Amendment interest in that
computer.

> 3.    The Agents Acted Reasonably in Imaging
>       the Hard Drive of the Laptop Computer

Assuming, arguendo, that the defendant had retained a
privacy interest in the laptop computer, the agents acted
reasonably in creating an onsite image of the laptop computer's
hard drive, pursuant to the defendant's mother's consent.

> a.   Applicable Law

A well-delineated exception to the Fourth Amendment
exists where a search "is conducted pursuant to the consent of an
authorized person."  United States v. Snype, 441 F.3d 119, 130
(2d Cir.2006).  To be valid, a consent need not be provided by
the actual owner of the property searched.  Rather, a consent
search will be upheld if the government can demonstrate that the
consent was given by "a third party who possesses common
authority over or other sufficient relationship to the premises
or effects sought to be inspected."  United States v. Matlock,
415 U.S. 164, 171 (1974).  "A third-party consent to a search
will validate the search if two prongs are present: first, the
third party had access to the area searched, and, second, either:
(a) common authority over the area; or (b) a substantial interest

---

[7]    Notably, prior to his trip to Pakistan, the defendant told a
witness that he believed it was the duty of Muslims in the United
States to travel to "Muslim countries" at war, such as Palestine,
Afghanistan and Somalia, to fight beside fellow Muslims against
their enemies, including United States military forces.
Furthermore, the defendant attempted to convince the witness to
travel to Somalia to fight jihad, stating that there were "no
more excuses" for avoiding jihad.  The defendant also told the
witness that he hoped to die as a martyr.  See January 25, 2012
Affidavit, ¶ 24.

in the area; or (c) permission to gain access." United States v. Davis, 967 F.2d 84, 87 (2d Cir. 1992).  Moreover, "[e]ven if the person giving consent in fact lacked authority to do so, the consent may nonetheless validate the search if the person reasonably appeared to the police to possess authority to consent to the search." United States v. McGee, 564 F.3d 136, 139 (2d Cir. 2009).  Apparent authority to give consent "must be judged against an objective standard: would the facts available to the officer at the moment ... warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?" Illinois v. Rodriguez, 497 U.S. 177, 188 (1990) (alteration in the original) (internal quotation marks omitted).

With respect to computers, "[w]hen determining whether a third party exercised actual or apparent common authority over the contents of a computer, courts typically examine several factors—whether the consenting third party in fact used the computer, whether it was located in a common area accessible to other occupants of the premises, and — often most importantly — whether the defendant's files were password protected." United States v. Clutter, 674 F.3d 980, 984 (8th Cir. 2012)(collecting cases).  Courts have also drawn a critical distinction between "search" and "seizure" of the property in question.  As the Supreme Court held in Texas v. Brown:

> Although our Fourth Amendment cases sometimes refer indiscriminately to searches and seizures, there are important differences between the two.... The Amendment protects two different interests of the citizen—the interest in retaining possession of property and the interest in maintaining personal privacy. A seizure threatens the former, a search the latter. As a matter of timing, a seizure is usually preceded by a search, but when a container is involved the converse is often true. Significantly, the two protected interests are not always present to the same extent; for example, the seizure of a locked suitcase does not necessarily compromise the secrecy of its contents, and the search of a stopped vehicle does not necessarily deprive its owner of possession.

460 U.S. 730, 747-48 (1983) (Stevens, J., concurring); see generally United States v. Jones, 132 S.Ct. 945, 951 (2012); Soldal v. Cook County, 506 U.S. 56 (1992).

8

With respect to the seizure of computers, courts have specifically held that a "temporary seizure of the computers while the officers applied for a search warrant did not meaningfully interfere with [the defendant's possessory interests]" and thus was not a Fourth Amendment "seizure." Clutter, 674 F.3d at 984 (citing United States v. Jacobson, 466 U.S. 109, 113 (1984) for the proposition that "[a] 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property."

b.  Application

Here, the defendant's mother had actual authority to consent to an imaging of the defendant's computer.  The defendant's computer was located in a bedroom in the defendant's mother's house, that was shared by the defendant and two juvenile siblings.  See FBI 302, April 16-17, 2009, attached hereto as Exhibit D, at 6-7.  Thus, the defendant's mother clearly had access to the property being searched.  Additionally, she had common authority and a substantial interest in the computer, in that the defendant allowed other members of his house to use the computer, including his juvenile sibling.  Id.  The laptop was found by the defendant's juvenile sibling in their shared bedroom.  Id. at 7.  Most importantly, the files contained on the defendant's computer were not password protected.  Furthermore, even assuming the defendant's mother did not have actual authority to consent to the imaging of the computer, the agents reasonably believed that the defendant's mother had authority to consent to the search of the computer.  See United States v. Andrus, 483 F.3d 711, 720 (10th Cir. 2007) (holding that defendant's father had apparent authority to consent to search of son's computer, despite the lack of any affirmative assertion by the father that he used the computer, and despite the existence of a user profile indicating that the son intended to exclude other household members from using the computer.

Finally, it is critical to note that the agents never removed the laptop computer from the premises.  Rather, they temporarily took custody of the laptop, while at the defendant's mother's house, in order to create a digital image of the laptop's hard drive.  Thus, because the agents conducted only "temporary seizure of the computers," and subsequently obtained a Rule 41 warrant, they did not meaningfully interfere with the defendant's possessory interest in the laptop, and the defendant's Fourth Amendment rights were not implicated.  See Clutter, 674 F.3d at 984.  In other words, the seizure of the image of the New York Hard Drive was not unreasonable.

> 4.   The Warrant to Search the New York
>      <u>Hard Drive was Supported by Probable Cause</u>

Assuming a warrant was required to search the defendant's computer, the totality of the circumstances set forth in the application for the search warrant established that it was amply supported by probable cause.

> a.   <u>Applicable Law</u>

It is well-settled that an affidavit supporting a search warrant is presumptively valid.  <u>See</u> <u>Franks v. Delaware</u>, 438 U.S. 154, 171 (1978).  This presumption stems from a belief in the function of the examining magistrate as a neutral gatekeeper, and it encourages law enforcement to seek warrants; "the preference for warrants is most appropriately effectuated by according great deference to a magistrate's determination."  <u>United States v. Leon</u>, 468 U.S. 897, 914 (1984) (internal quotations and citation omitted).  "The only questions for the [reviewing] Court are whether the [affiant's] reliance on that informant was reasonable, and whether the Magistrate was fully informed of all necessary facts when she made her finding of probable cause for the issuance of the search warrant."  <u>United States v. Smith</u>, 9 F.3d 1007, 1013 (2d Cir. 1993)(quoting <u>United States v. Brown</u>, 744 F. Supp. 558, 566 (S.D.N.Y. 1990)).  Difficulty in assessing whether the affidavit in a particular case evidenced the existence of probable cause "should be largely determined by the preference to be accorded to warrants."  <u>United States v. Ventresca</u>, 380 U.S. 102, 109 (1965).

Under <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), a district court may not admit evidence seized pursuant to a warrant if the warrant was based on materially false and misleading information.  Materially misleading omissions as well as misrepresentations may be challenged by the defense.  <u>See</u>, <u>e.g.</u>, <u>United States v. Ferguson</u>, 758 F.2d 843, 848 (2d Cir. 1985).  The <u>Franks</u> Court outlined the procedures and standards to be used in trying to balance the defense's right to challenge the sufficiency of the affidavit against the potential for misuse of the privilege as a way to expand the proper scope of discovery.  438 U.S. at 171.  Specifically, the Court held that a defendant would be entitled to a hearing on a challenge to the affidavit only upon a "substantial preliminary showing" that (1) the affidavit contained false statements made knowingly or intentionally, or with reckless disregard for the truth; and (2) the challenged statements or omissions were necessary to the Magistrate's probable cause finding.  <u>Id</u>. at 171-72.  Under this second requirement, the defense motion must be denied without a

hearing if, after setting aside the allegedly misleading
statements or omissions, "there remains a residue of independent
and lawful information sufficient to support probable cause."
Ferguson, 758 F.2d at 849.

      b.    <u>Application</u>

      The defendant contends that the affidavit in support of
the warrant is not supported by probable cause.  <u>See</u> Def. Mem. at
5.  Specifically, he claims that the affidavit is "full of
irrelevancies" and cites as examples of purported irrelevancies
"a trip to Pakistan," the defendant's online posting of a video
entitled "Benefits of Jihad in our Times," and the defendant's
attempt to convince a witness to "learn Arabic on the
battlefield" in Yemen.  <u>See</u> Def. Mem. at 3-4.  Yet the defendant
is charged with lying to the FBI about the purpose of his trip to
Pakistan, which the government will prove was to join a jihadist
fighting group.  Thus, the defendant's contention that the
defendant's travel to Pakistan (which was to join a jihadist
fighting group) and his support for violent jihadist propaganda,
constitute "irrelevances" is bewildering.

      Furthermore, although the defendant argues that
accessing pro-jihadist materials is a "perfectly legal expression
of the First Amendment," <u>see</u> Def. Mem. at 4 n. 4, the defendant
is not charged with merely accessing such materials.  Rather, he
is charged with lying to the FBI about his purpose for traveling
to Pakistan.  Thus, the fact that the defendant was reading and
promulgating pro-jihadist materials is direct evidence of the
charged offenses, and also evidence of the defendant's motive and
intent for traveling for Pakistan, as set forth in the
government's March 12, 2012 motion in limine.  <u>See</u> <u>United States</u>
<u>v. Rahman</u>, 189 F.3d 88, 118 (2d Cir. 1999)(holding that "while
the First Amendment fully protects [the defendant's] right to
express hostility against the United States, and he may not be
prosecuted for so speaking, it does not prevent the use of such
speeches or writings in evidence when relevant to prove a
pertinent fact in a criminal prosecution").

      The defendant further contends that "[l]ittle of the
activity attributed to [the defendant] directly addresses lying."
<u>See</u> Def. Mem. at 5.  On the contrary, the facts set forth in the
affidavit, including the defendant's statements to two witnesses
that he intended to travel to Pakistan to join a jihadist
fighting group, and the defendant's administration of web sites
that advocated for violent jihad, are powerful evidence that the
defendant lied to FBI agents when he claimed that he traveled to
Pakistan to attend a wedding and a school, and not to join a

jihadist fighting group.  The defendant, apparently conceding
this fact, then contends that this "would be plausible were it
not for the fact that the content of his communications were
misrepresented to the magistrate judge."  See id.  However, the
defendant does not identify any specific misrepresentations.
Rather, he generally suggests that "[o]nce...the web sites he
posted are identified by the FBI declarant as espousing violence,
everything else falls into place and, with due respect, the
magistrate loses objectivity and instead endorses the FBI's
representations."  See id. at 6.  Considering that "the
preference for warrants is most appropriately effectuated by
according great deference to a magistrate's determination," Leon,
468 U.S. at 914, the defendant's vague and unsupported suggestion
that Judge Pohorelsky lost objectivity should be firmly rejected.

     Relatedly, the defendant's claim that the agent's
statement in the affidavit that he "learned that [the defendant]
was the creator and administrator of multiple web sites which
advocated violent jihad against the West" constituted a "bald
misstatement of the contents of the postings" in violation of
Franks is simply absurd.  The web sites to which the agent
referred contained, inter alia, the following content: (1) a
video of former al-Qaeda leader Osama bin Laden, titled: "To the
Peoples of the West"; (2) a hyperlink to www.anwar-alawlaki.com,
a web site that advocated violent jihad against the United States
and its allies; (3) a recording titled: "Benefits of Jihad in Our
Times"; (4) a recording titled "Shaykh Abu Yahya al-Libi -
Somalia - No Peace Without Islaam" (sic), containing statements
by Abu-Yahya al-Libi, a military commander for al-Qaeda located
in the Federally Administered Tribal Areas of Pakistan; (5) a
speech by al-Qaeda leader Ayman al-Zawahiri; (6) an audio
recording of Awlaki, reciting a book on jihad entitled "Mashari
al Ashwaq," accompanied by a montage of still images of jihadist
fighters under the heading, "What is the least we can do?"; (7)
an image of a man holding a sign which read "JIHAD IS OUR WAY";
(8) hyperlinks to on-line lectures and blogs from Awlaki; and (9)
a directory of listings for "Jihad magazines," news accounts of
"Afghanistan and Iraq mujahideen operations," and, in the context
of these postings, a link to a travel agency.  See January 25,
2012 Affidavit, ¶¶ 8-16.  This extensive collection of al-Qaeda
propaganda material that the defendant distributed through his
web sites clearly advocated violent jihad against the West, and
the defendant's claim that the agent's statement to this effect
was a "bald misstatement of the contents of the postings" is
absurd.

     The defendant speculates as to whether there may have
been "innocent reasons" for distributing this library of al-Qaeda

propaganda materials.  See Def. Mem. at 6.   While the defendant
is certainly entitled to present these arguments to a jury,
neither the agents nor Judge Pohorelsky were required join in the
defendant's strained view of the evidence.

Finally, even assuming, arguendo, that the defendant is
correct, he still cannot make a "substantial preliminary showing"
that (1) the affidavit contained false statements made knowingly
or intentionally, or with reckless disregard for the truth; and
(2) the challenged statements or omissions were necessary to the
Magistrate's probable cause finding.  Franks, 438 U.S. at 171-72.
Initially, the affiant's description of the al-Qaeda propaganda
materials distributed online by the defendant as advocating
"violent jihad against the West" is entirely accurate.   Yet even
if that portion of the affidavit describing the defendant's pro-
jihadist online activities is set aside, the remainder of the
affidavit provides ample basis to support Magistrate Pohorelsky's
probable cause determination.   In fact, the affidavit summarizes
in detail not only the defendant's online activities but also the
defendant's: (1) false statements to an Army recruiter about his
prior travel to Pakistan, see ¶ 17; (2) statements to two
witnesses in New York that he was traveling to Pakistan in order
to join a jihadist fighting group, see ¶ 22-29; (3) attempt to
travel to Somalia (a hotbed of jihadist activity) on a one-way
ticket, see ¶ 37; (4) attempt to convince a witness in Hawaii to
"learn Arabic on the battlefield" and to place pornography and
music on his computer before he traveled to avoid suspicion in
the event airport security searched his computer, see ¶ 39; and
(5) admissions to FBI agents in Hawaii that he had in fact
traveled to Pakistan to join a jihadist fighting group, see ¶¶
41-42.   Collectively, this information was more than sufficient
to establish probable cause that the defendant had committed the
charged offenses, and that the computers in New York and Hawaii
contained fruits and instrumentalities of the charged offenses.

> 5.   The Agents Acted in Good Faith
>      in Executing the Warrant

Even if the warrant was not supported by probable
cause, the defendant's motion should be denied because the agents
executed the warrant in good faith reliance on Magistrate
Pohorelseky's probable cause determination.

> a.   Applicable Law

Generally, the exclusionary rule bars evidence obtained
in violation of the Fourth Amendment.  See Mapp v. Ohio, 367 U.S.
643, 654-55 (1961).  However, in United States v. Leon, the

Supreme Court held that, subject to certain exceptions, the exclusionary rule of the Fourth Amendment should not be applied to suppress evidence obtained by officers acting in reasonable reliance on a search warrant that is ultimately determined to be defective.  <u>Leon</u>, 468 U.S. 897 (1984).  The underlying rationale for this exception is that the exclusionary rule "operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.'"  <u>Leon</u>, 468 U.S. at 906 (quoting <u>United States v. Calandra</u>, 414 U.S. 338, 348 (1974); <u>see also</u> <u>Arizona v. Evans</u>, 514 U.S. 1, 10 (1995) (exclusion only warranted if it will result in "appreciable deterrence" of police misconduct)).

    The question of an officer's good faith reliance, or lack thereof, "is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." <u>Leon</u>, 468 U.S. at 923, n. 23.  The determination of whether to apply the good faith exception or to exclude evidence must be made "on a case-by-case basis," and suppression should only occur "in those unusual cases in which exclusion will further the [deterrent] purposes of the exclusionary rule."  <u>Id</u>. at 918.

    The <u>Leon</u> Court identified four situations where an executing officer's reliance on a search warrant could not have been in good faith: (1) the issuing magistrate was either knowingly or recklessly misled by false information during his review of the warrant application; (2) the issuing magistrate entirely abandoned his judicial role; (3) the officer's affidavit in support of the warrant application was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" or (4) the warrant application is facially deficient to the extent it fails to state the particular place to be searched or items to be seized.  <u>Id</u>. at 923 (citations omitted).

### b.   <u>Application</u>

    Here, the FBI agents clearly acted in good faith.  They properly sought court authorization and relied upon Magistrate Pohorelsky's authorization to search the New York Hard Drive.  As discussed above, there were no misrepresentations in the affidavit, and Magistrate Pohorelsky's probable cause determination was not unreasonable such that it was tantamount to "abandon[ing] his judicial role."  Finally, the affidavit and warrant for the New York Hard Drive identified with particularity

14

the property to be searched and the things to be seized.  See January 25, 2012 Affidavit, Attachment A (describing property to be searched as "ONE WESTERN DIGITAL 750 GIGABYTE HARD DRIVE, SERIAL NUMBER WCAU40349797, CONTAINING A DIGITAL IMAGE OF A HITACHI HARD DRIVE, SERIAL NUMBER 080821BB6F00WDK41ZUG, LOCATED WITHIN A TOSHIBA SATELLITE LAPTOP COMPUTER, SERIAL NUMBER 98085678W, created at the STATEN ISLAND RESIDENCE located at 450 Drumgoole Road West, Staten Island, New York 10312"); Attachment B (describing records to be seized as, inter alia, "internet search terms" and "jihadist-related propaganda materials in any digital format," all relating to violations of Title 18, United States Code, Section 1001(a)(2)).  Therefore, the good faith exception applies, and the Court should deny the defendant's motion to suppress the evidence recovered from the defendant's New York Hard Drive.

## II.   The Defendant's Trial Should Not Be Bifurcated

On December 23, 2010, the defendant was charged in a three-count indictment with making false statements in a matter involving international terrorism, in violation of 18 U.S.C. § 1001(a).  The government will prove at trial that the defendant attempted to travel overseas to join a jihadist fighting group, told his associates of his intentions prior to traveling, and made false statements to federal law enforcement authorities in connection therewith.

The defendant moves to bifurcate his trial into guilt and penalty phases, due to the three-year "sentencing enhancement" set forth in 18 U.S.C. § 1001.  See Def. Mem. at 11 n.7.  Specifically, the defendant contends that the charges would force the defendant to present an "[a]rgument in the alternative" in order to avoid the three-year enhancement, to wit: "The government cannot prove my client lied beyond a reasonable doubt but, if you find that the government has met this burden, it was not in aid of terrorism."  See id.  Suggesting that such argument in the alternative is "not recommended by the great trial tacticians," the defendant requests that trial be bifurcated into guilt and penalty phases in order to reach a "fair solution." See Def. Mem. at 11 n. 7.  In support of his argument, the defendant contends that "there is nothing in the Federal Rules of Procedure forbidding this practice and here, as in a capital case, the evidence of the guilt phase carries over into the penalty phase."  See id. at 11.  The defendant's argument is completely without merit.

A.   Applicable Law

        Title 18, United States Code, Section 1001 provides
that an individual who makes a false statement "shall be fined
under this title, imprisoned not more than 5 years, or if the
offense involves international or domestic terrorism (as defined
in section 2331), imprisoned not more than 8 years, or both."

        In this case, the government charges that the
defendant's false statements involve international terrorism,
which subjects the defendant to a maximum term of imprisonment of
eights years on each count, as opposed to five years.   The
government must therefore prove this fact to a jury beyond a
reasonable doubt.   See Apprendi v. New Jersey, 530 U.S. 466, 490
(2000) ("Other than the fact of a prior conviction, any fact that
increases the penalty for a crime beyond the prescribed statutory
maximum msut be submitted to a jury and proved beyond a
reasonable doubt.").

        Second Circuit case law generally does not favor
bifurcation.   See United States v. Amante, 418 F.3d 220, 224 (2d
Cir. 2005)(holding that bifurcation in 18 U.S.C. § 922(g) cases,
absent government consent, generally constitutes error); United
States v. Chevere, 368 F.3d 120, 121 (2d Cir. 2004) ("[A]
district court has no discretion, in a prosecution under §
922(g)(1), to allow a defendant to stipulate to a prior
conviction and thereby entirely withhold that element of the
offense from the jury's consideration.")   The exception to this
rule is in capital cases, where bifurcation is mandated by
statute.   See 18 U.S.C. § 3593.   As discussed below, these lines
of cases do not support the defendant's motion.

B.   Application

        Here, the defendant is charged with making three false
statements to the FBI: (1) that he was traveling to Pakistan to
attend a religious school, when in fact, as he then and there
well knew and believed, the defendant was not traveling to
Pakistan to attend a religious school, but rather to join a
jihadist fighting group; (2) that the purpose of the defendant's
travel to Pakistan was to attend a religious school and an
engagement party, when in fact, as he then and there well knew
and believed, the purpose of the defendant's travel to Pakistan
was not to attend a religious school and an engagement party, but
rather to join a jihadist fighting group; and that he falsely
denied that the purpose of his travel to Pakistan was to join a
jihadist fighting group, when in fact, as he then and there well
knew and believed, the purpose of the defendant's travel to

16

Pakistan was to join a jihadist fighting group; and (3) that the
defendant never told anyone that he intended to travel to
Pakistan to join a jihadist fighting group, when in fact, as he
then and there well knew and believed, the defendant had
previously told one or more persons that the purpose of his
travel to Pakistan was to join a jihadist fighting group.

First, each of the charged § 1001 violations
necessarily involves international terrorism, in that each false
statement turns on whether the defendant traveled to Pakistan in
order to join a jihadist fighting group, or told someone that he
intended to join a jihadist fighting group.  Put another way, the
proof of the false statement is inextricably intertwined with the
proof of the "sentencing enhancement."  It is impracticable, if
not impossible, to bifurcate the defendant's trial into a guilt
and penalty phase on the issue of whether the defendant's false
statements involved international terrorism.  For the same
reasons, the potential for prejudice as argued by the defendant
does not exist.  This is analogous to arguments rejected by the
Second Circuit in the context of 18 U.S.C. § 922(g) felon-in-
possession cases, wherein defendants have moved to bifurcate
trial on the issue of prior felony convictions.  In such cases,
the Circuit has clearly held that "[a] prior conviction is not
prejudicial where the prior conviction is an element of the
crime," because it "prove[s] the fact or issue that justified its
admission [into evidence]."  United States v. Gilliam, 994 F.2d
97, 100 (2d Cir. 1993) (internal quotation marks omitted).  The
Second Circuit emphasized that "[w]here the prior conviction is
essential to proving the crime, it is by definition not
prejudicial."  Id.  In this case, because the defendant's attempt
to travel to Pakistan to join a jihadist fighting group is an
element of at least two of the charged crimes, proof that his
lies involved international terrorism is not unduly prejudicial.

Second, the defendant cites to no law, and the
government can find none, where a court has bifurcated a false
statement case into a guilt and penalty phase.  Indeed, the
defendant's argument would seem to exist for every crime that
contains a lesser included offense, and yet, courts routinely
submit such "sentencing enhancement" elements for juries'
considerations, together with the other charged elements.  See,
e.g., United States v. Thomas, 274 F.3d 655 (2d Cir. 2001)
(applying Apprendi to federal narcotics laws, and holding that
"[a]fter Apprendi, drug type and quantity are elements of the
offense under 21 U.S.C. § 841 that must be charged in the
indictment and submitted to the jury for its finding beyond a
reasonable doubt" when they raise a potential penalty above the
otherwise applicable statutory maximum).

17

Third, the defendant's analogy to bifurcation of capital cases into guilt and penalty phases is completely inapplicable.  See Def. Mem. at 11 n.7 (requesting that the Court "[b]ifurcate the trial into a 'guilt phase' and a 'penalty phase' as we would in a death penalty trial").  Bifurcation of capital cases is mandated by statute, and for good reason.  See 18 U.S.C. § 3593(b).  The aggravating factors that can support a punishment of death obviously could unduly prejudice a defendant's guilt phase.  See, e.g., 18 U.S.C. §§ 3591(c)(2) (previous conviction of violent felony involving firearm); (c)(3) (previous conviction of offense for which a sentence of death or life imprisonment was authorized; (c)(4) (previous conviction of other serious offenses); (c)(10) (previous conviction for two felony drug offenses); see also 18 U.S.C. § 3593 (non-statutory aggravating factors may include effect of offense on victim, victim impact statement and any other relevant information); United States v. Whitten, 610 F.3d 168, 176 (2d Cir. 2010) (citing "victim impact" and "future dangerousness" as non-statutory aggravating factors); United States v. Pepin, 514 F.3d 193, 198 (2d Cir. 2008) (citing "future dangerousness" as non-statutory aggravating factor).  Such aggravating factors do not exist in the context of this false statements case, and the proof of the other elements overlaps with the proof of the sentencing element.  Therefore, the defendant's analogy fails.

In sum, the defendant's motion to bifurcate the trial is impractical, the defendant cannot allege prejudice, and there is no legal precedent for the defendant's request.  Accordingly, his motion should be denied.

III. The Evidence Described in the Government's March 12, 2012
     In Limine Motion is Admissible as Direct Evidence
     Alternatively, Pursuant to Fed. R. Evid. 404(b)

On March 12, 2012, the government moved in limine to introduce at trial as direct evidence of the charged offenses or, alternatively, pursuant to Rule 404(b), to prove that the defendant's motive and intent for traveling to Pakistan was to join a jihadist fighting group, and to prove the defendant's ongoing planning and preparation to join such a group, the following evidence: (1) electronic evidence, including computer screen shots capturing the defendant's pro-jihadist online activities, and files seized from the defendant's computers pursuant to two criminal search warrants, and a consent search; (2) testimony and physical evidence regarding the defendant's attempt to join the United States Army under false pretenses; (3) email communications between the defendant and Awlaki; and (4)

testimony and travel records regarding the defendant's attempt to travel to Somalia.

In his April 17, 2012 memorandum, the defendant opposes the government's motion in limine.  The defendant contends, with regard to the proffered evidence, that the "probative value is minute and their prejudicial value is gargantuan."  See Def. Mem. at 10.  The defendant also individually objects to each category of evidence proffered in the government's motion in limine.  The defendant does not cite a single case in support of his individual objections, nor does he accurately describe the facts. For the reasons discussed below, the defendant's contentions are meritless.

A.    Applicable Law

The legal standards for determining the admissibility of the proffered evidence that the government seeks to admit at trial as direct evidence of the charged offenses or, alternatively, pursuant to Fed. R. Evid. 404(b), have been set forth in the government's March 12, 2012 motion in limine. However, because the defendant has raised a broad Fed. R. Evid. 403 objection with respect to all the proffered evidence, a brief discussion of that standard is included herein.

Rule 403 provides for the exclusion of probative evidence if its value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury and unnecessary delay.  See Fed. R. Evid. 403.  Evidence is unfairly prejudicial "only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence."  United States v. Figueroa, 618 F.2d 934, 943 (2d Cir. 1980).

In the Fed. R. Evid. 404(b) context, other conduct evidence is not unfairly prejudicial where it is not "any more sensational or disturbing than the crimes" with which the defendant has been charged.  United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990).  Rather, when reviewing evidence admitted pursuant to Rule 404(b), this court considers whether: (1) the prior act evidence was offered for a proper purpose; (2) the evidence was relevant to a disputed issue; (3) the probative value of the evidence was substantially outweighed by its potential for unfair prejudice pursuant to Rule 403; and (4) the court administered an appropriate limiting instruction.  See United States v. McCallum, 584 F.3d 471, 475 (2d Cir. 2009) (internal quotations omitted); see also United States v. Vargas, 702 F. Supp. 70, 72-73 (S.D.N.Y. 1988) (holding that in the Fed.

R. Evid. 404(b) context, a defendant "must show some undue
prejudice, apart from the prejudice implicit in Rule 404(b)
evidence.").

      B.   <u>Application</u>

     The general crux of the defendant's objections to the
government's motion <u>in limine</u> is that any testimony regarding
terrorism will unduly prejudice the defendant, despite the fact
that he is charged with making false statements in connection
with his attempt to travel to Pakistan in order to join a
jihadist fighting group such as al-Qaeda or the Taliban.  The
defendant is mistaken.

     In <u>United States v. Salameh</u>, the Second Circuit
rejected a similar claim that the district court should have
precluded, pursuant to Fed. R. Evid. 403, the admission of
certain extremist materials.  152 F.3d 88, 110 (2d Cir. 1998).
In that case, six defendants were indicted on various charges
relating to their participation in the plot to bomb the World
Trade Center and, at trial, the district court admitted the
following terrorist materials seized from one defendant into
evidence against all six defendants: "(1) a videotape of the
bombing of an American embassy which also provided instruction on
how to make explosives and timing devices; (2) [defendant's]
handwritten notebooks on how to make explosives (including urea
nitrate) and improvised weapons; (3) a videotape containing a
chemistry lesson on manufacturing explosives; (4) manuals on
catalysts, detonators and other bomb ingredients; (5) a document
entitled "Facing the enemies of God terrorism is a religious duty
and force is necessary," which urged acts of terrorism against
the enemies of Islam; and (6) a book entitled "Rapid Destruction
and Demolition," which described the destruction of buildings and
contained a formula for using explosives to accomplish this end.
<u>Id</u>. at 110.  The Second Circuit upheld the district court's
ruling that the materials constituted probative evidence of
motive, as well as background information necessary to the jury's
understanding of the charges.  The Court also rejected the
argument that its prejudicial effect outweighed its probative
value, despite the "sulphurous anti-American sentiments"
expressed in the materials.  <u>Id</u>. at 111.

     Similarly, in <u>United States v. Kassir</u>, over the
defendant's Rule 403 objection, the district court admitted
404(b) evidence that the defendant, charged with providing
material support to al-Qaeda, associated with other terrorist
groups, attended jihad training camps and admitted killing people
in fighting jihad, finding the "danger of unfair prejudice is

relatively low since Defendant's association with terrorist groups other than al Qaeda 'did not involve conduct more inflammatory' than Defendant's charged conduct -- providing material support to al Qaeda." Kassir, No. 04 Cr. 356 (JFK), 2009 WL 976821, at *6 (S.D.N.Y. April 9, 2009) (quoting United States v. Livoti, 196 F.3d 322, 326 (2d Cir. 1999)).

In this case, as discussed in more detail below, the evidence in question is direct, highly probative evidence of the defendant's guilt with respect to the charged crimes, and the danger of unfair prejudice is relatively low, given the nature of the charged crimes. The evidence in question is not isolated from the charged counts, but integrally related to them. As a result, the Court should reject the defendant's challenge to the evidence under Rule 403, and grant the government's motion in limine in its entirety.

The defendant's argument with respect to each separate category of evidence is further addressed below.

### 1. Electronic Evidence

The defendant objects to the introduction of evidence of a series of Google searches executed on or before June 2, 2008 on the defendant's shared home computer[8], for jihadist terms including "baitullah mehsud," "fata," "south waziristan pakistan" and "taliban." He contends that such searches might be found on the computers of law enforcement authorities or academics, and the defendant's purpose might be no different. See Def. Mem. at 11-12; 3/12/12 Mot. In Lim. at 4-5. Similarly, the defendant objects to the introduction of the file "44 Ways of Supporting Jihad," a sermon by Awlaki that encourages others to fight jihad, that was found on the New York Hard Drive, on the basis that a link on a computer is "no evidence of anything important." He further contends that "[w]e killed Anwar Al-Awlaki and at least half the jurors will remember it," and this will prejudice the jury. See Def. Mem. at 12; 3/12/12 Mot. In Lim. at 5.

As set forth above, the government must prove that the defendant lied to federal law enforcement authorities about his true purpose for traveling to Pakistan: to join a jihadist fighting group. Notably, the defendant is charged in two counts with lying about his motive and intent, rather than a tangible fact. Accordingly, circumstantial evidence that tends to establish the defendant's motive and intent, such as the

---

[8]     The defendant does not move to suppress this evidence, which was obtained pursuant to a consent search on April 16, 2009.

electronic evidence recovered from his computers, will be
directly relevant to proving an element of the charged offenses.
It is highly probative of the defendant's motive and intent for
traveling to Pakistan, that the defendant was searching for
jihadist leaders (Baitullah Mehsud), jihadist groups (the
Taliban), known locations for these groups (FATA[9] and South
Waziristan) and jihadist "pep talks" (44 Ways of Supporting
Jihad).  Furthermore, to the extent that defense counsel is
concerned about prejudice due to news media surrounding the death
of Awlaki, this concern can be addressed during jury selection
and/or an instruction from the Court.  Finally, the defendant
will have an opportunity to argue to the ultimate fact finder,
the jury, that his possession and distribution of violent
jihadist propaganda does not shed light upon his intent and
motive for traveling to Pakistan.  However, the government
respectfully submits that this evidence is admissible as direct
evidence of the charged offenses or, alternatively, pursuant to
Fed. R. Evid. 404(b).

2.   <u>False Statements to Army Recruiter</u>

The defendant objects to the introduction of evidence
that he lied to an Army recruiter in connection with his
attempted enlistment, by failing to disclose his prior travel to
Pakistan and mutilating his passport in order to remove his
Pakistani travel visa.  <u>See</u> Def. Mem. at 12-13.  The defendant
characterizes his lies to an Army recruiter as "relatively
benign," and attempts to excuse his deception by claiming that
the "fact that the defendant knew that his travel to the Middle
East and Pakistan would raise a red flag to a recruiter whose
applicant had a Muslim name should not be a surprise."  <u>See</u> Def.
Mem. at 13.

The defendant's discussion of this evidence glosses
over critical additional evidence that the government seeks to
introduce to provide context to his lies, to wit: that the
defendant had admitted to two witnesses that he attempted to join
the Army as part of his jihad.  Specifically, the defendant
stated that he hoped to be deployed to Iraq, at which time he
would commit "treason" and fight United States soldiers.  <u>See</u>
3/12/12 Mot. In Lim. at 6-7.  The defendant's statements,
combined with his attempt to conceal his prior travel to
Pakistan, is clearly direct and highly probative evidence of the
defendant's motive and intent to travel to Pakistan to join a

---

[9]     "FATA" refers to the Federally Administered Tribal Areas, a
tribal region of northwest Pakistan that serves as a stronghold
for the Taliban and al-Qaeda.

jihadist fighting group.  To the extent that the defendant seeks
to characterize his false statements to the Army recruiter as
"benign" attempts to avoid what he suggests is Army recruitment
discrimination, rather than evidence of his intent to join a
jihadist fighting group, he is certainly free to raise those
arguments with the jury.

       3.   <u>Communications with Anwar Al-Awlaki</u>

      The defendant objects to the introduction of evidence
that the defendant exchanged emails with Anwar Al-Awlaki, on the
basis that Awlaki was "not then declared a terrorist." <u>See</u> Def.
Mem. at 13.  The government no longer intends to introduce this
evidence at trial.  <u>See</u> <u>United States v. Shehadeh</u>, 10-CR-1020
(ENV), Docket Entry 87 (withdrawal of FISA notice).  Accordingly,
this issue is now moot.

       4.   <u>Defendant's Attempted Travel To Somalia</u>

      The defendant contends that introduction of evidence of
his attempted travel to Somalia using a one-way ticket should be
precluded because, <u>inter alia</u>, "there are no links between
Somalia and training camps." <u>See</u> Def. Mem. at 14.  The
defendant's claim is false.

      As set forth in the government's motion <u>in limine</u>,
Somalia is the operational headquarters of the violent terrorist
organization al-Shabaab, a U.S. State Department designated
foreign terrorist organization and a close ally of al-Qaeda in
East Africa that is currently engaged in a terrorist war against
the Somali government.  The defendant jokes that perhaps he
attempted to travel to Somalia because he "wanted to become a
pirate." <u>See</u> Def. Mem. at 14.  However, the fact that the
defendant attempted to travel on a one-way ticket to Somalia, the
operational headquarters of al-Shabaab, a country to which he has
no known ties, after his prior attempt to travel to Pakistan to
join al-Qaeda or the Taliban was thwarted, constitutes powerful
evidence of the defendant's continued intent and commitment to
joining a jihadist fighting group and should be admitted.  As
discussed above, the defendant told a witness that he believed it
was the duty of Muslims in the United States to travel to "Muslim
countries" at war, <u>including Somalia</u>, to fight beside fellow
Muslims against their enemies, including United States military
forces.  The defendant attempted to convince the witness to
travel to Somalia to fight jihad, stating that there were "no
more excuses" for avoiding jihad, and also told the witness that
he (the defendant) hoped to die as a martyr.  <u>See</u> January 25,
2012 Affidavit, ¶ 24.  In this context, the defendant's attempt
to travel to Somalia is highly probative of his determination to

join a jihadist fighting group, an important fact which the government must establish at trial.

IV.  Conclusion

        For the foregoing reasons, the defendant's motions to suppress the electronic evidence, and to bifurcate his trial, should be denied, and the government's March 12, 2012 motion in limine should be granted.

                                Respectfully submitted,

                                LORETTA E. LYNCH
                                United States Attorney


                        By:    /s/ Ali Kazemi
                                James P. Loonam
                                Ali Kazemi
                                Assistant U.S. Attorneys
                                (718) 254-7520/6171


cc:  Frederick Cohn, Esq. (Via ECF and Email)