FREDERICK H. COHN

ATTORNEY AT LAW

111 BROADWAY

SUITE 1805

NEW YORK, NY 10006

212-768-1110

FAX 212-338-9088

fcohn@frederickhcohn.com

June 6, 2012

<u>Via ECF</u>

Honorable Eric N. Vitaliano
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

     Re: **United States v. Addel Hameed Shehadeh**
        **Criminal Docket No.: 10-1020 (ENV)**

Dear Judge Vitaliano:

Preliminary Statement

  This submission is a response to the Government non classified submission of May 21. We respond to each of the arguments presented in the order chosen by the Government. A separate response on the classified submission made by the Government is submitted via the SCIF.

Mootness

  The government's assertion that the material seized from the Hawaiian computers will not be used at trial is sufficient and that issue is indeed moot.

The Contents of the New York Lap Top Hard Drive Should be Suppressed

  The Government misstates the argument of the defendant. "The defendant contends that the warrant did not adequately identify the crime being investigated." (Government memorandum page 4). That is not true. The memorandum of the defendant, after stating the

crimes with which the defendant is charged (lying to the FBI) says, that "this is the charge being investigated"( Defendant's Memorandum page 3). The memorandum goes on to explain that the affidavit is full of irrelevancies as to the crimes charged. The implication at this point of the memorandum is that the FBI was looking for evidence of other more serious crimes (none was found). In the argument itself the defendant says, "clearly all that is relevant is whether there was evidence of the crime at issue. It may not be any old crime but must evidence the crime of lying to the FBI." (Defendant's memorandum page 5, citations omitted).

The evidence to which the Government proudly points is so disconnected that the Government felt constrained to offer it by way of its motion *in limine*. The warrant's recitation in Attachment B, the things to be seized in the hard drive, indicate that the application for a warrant itself was a charade and that the real search was for evidence of some other crime of terrorism with which the defendant could be charged.

The lie allegedly told to the FBI was that the defendant was going to Pakistan to attend a wedding and to find a madras (a religious school) where he could steep himself in the traditions and scholarship of Islam.

The items listed to be seized had no other purpose than to garner intelligence about terrorists and to implicate the defendant in some other crime.

The government sought his browser history, internet search terms, jihadist propaganda materials , bank records etc. videos of Shehadeh discharging firearms and contacts and buddy lists. Of particular interest is (d) "any information regarding Shehadeh's schedule of travel from April 2008 to [January 25, 2012]."

The issue before the court, at the time of the warrants, was, is there evidence available in the material to be seized that would reveal the true intent of the defendant's trip to Pakistan? What could be gleaned from most of the material sought was, that he traveled to Paksitisan, a fact already known to the Government who had searched him and his belongings before his plane to Pakistan took off and where the Government arranged for the Pakistanis not to admit him into the country. The material enumerated in the warrant was clearly a deceptive cover for a general search looking for other crimes. None was found. In other words, more traditionally used where the government was not accused of misdirection, the warrant was overbroad because it authorized a general search. Here the search was not merely general, but a rummaging through the defendant's most personal thoughts as digitally inscribed in a desperate search to find some other crime with which this man, who they believed sympathized with jihadists, could be charged.

The Search of the Laptop Computer.

The government offers several reasons why it believes the search of the lap top computer was legal:
1. The computer was abandoned by the defendant and therefore his mother had apparent authority to allow the search.

2. There was no search as all the agents did was make a mirror image of the hard drive and later sought and obtained a search warrant for the contents.

3. The defendant's mother had the authority to allow the search because she was in control of the property

### The Abandonment Theory

Not only was the lap top not abandoned, but the government cannot sustain its burden to prove the abandonment. After citing cases where it was clear that the owner of the property was never going to return, or where ownership was disclaimed, hence no standing (government memorandum page 5) the Government asks the court to infer that the defendant's purchase of a one way ticket to Honolulu and failure to inform his mother where he was going, is clear evidence that he had abandoned it, and that he had no intention to return. It does not mean that at all. At best the Government might argue that he did no know when he would return. [1]

***United States v. Levasseur***, 816 F.2d 37 (2d Cir 1987) cited by the Government as a justification for a finding of abandonment is totally inapposite. In Lavasseur the defendant actually fled from police who were about to arrest them. They fled the premises leaving stores of weapons. It is clear that the defendant recognized that there was no possibility of return and the district judge's determination that the property was abandoned was not clearly erroneous.

Here the Government, created the circumstance where returning was beyond Shehadeh's means having placed the defendant on the no fly list leaving him stranded 5000.00 miles from our western coast. They offer no evidence that the defendant intended never to return. The property was not abandoned.

### The Mother was not an authorized person to give consent

The Government contends that mother was an authorized person to give consent to making a mirror image of the lap top's hard drive and that this process was not constitutionally protected since it was not a search. The Government claims that the actual search was of the files in the lap top and that this was performed pursuant to a warrant.

There are several deficiencies in that theory, first and foremost is that even if the making of the mirror image was not a search because the content was yet unread, that process was a seizure of the hard drive as surely as if they had removed the hard drive itself.

The issue then remains whether the mother reasonably appeared to the police to have the authority. No reasonably trained policeman could actually expect that a person who did not initially know where the computer was secreted, who did not use the computer, and where other members of the household did not have access to that computer, had the authority to permit the police to seize it.

---

[1] In fact the mother did not know where the lap top computer was. She "found it" the day after the visit by the agent's (Gov't memorandum p.6)

This was the same as if the mother had consented to a search of a closed container belonging to her son. See *United States v. Barth*, 26 F.Supp.2d 929 (W.D. Texas 1998). Nor did the mother have apparent consent under *United States v. Matlock*, 415 U.S.164, 94 S.Ct. 988 (1973) since the lap top itself was not in an area that it must have been apparent to Shehadeh that his mother might surrender it to a seizure. *Ibid* p.171 n.7

Given that there was no right to make a mirror image, any subsequent search is fatally tainted and the search of the content of the lap top must be suppressed even if there was probable cause to search it pursuant to warrant.

Good Faith

Nor does the "good faith of the agents save the day for the Government since reliance on the Magistrate Judge's granting of the warrant is a nullity because the application is tainted by the illegality of the seizure of the hard drive. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407 (1963) The rationale of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405 (1984) does not apply where agents, to obtain the basis for laundering a secondary search of seizure, must have been aware that the initial seizure was questionable. They should be penalized by the application of the exclusionary rule

Bifurcation

Arguing that the circuit has spoken definitively rejecting bifurcation.(citing *United States v. Amante*, 418 F.3d 220, 224 (2d Cir 2005), *United States v. Chevere*, 368 F.3d 120, 121 (2d Cir 2004)) the government seeks to transmute a limited rule that, where there is an element of the crime to be considered, that element may not be removed from the jury's consideration over the government's objection, into a generalized rule of no bifurcation ever except in capital cases.

The government's argument that, by analogy to drug amounts (government memorandum page 17), where a sentencing enhancement, is promoted to an element of the crime, seeks to break new ground and, in real terms, seeks, by its Rule 404(b) submission *infra*, to poison the atmosphere so that in the atmosphere of jury antipathy to Muslims generally and Muslim "terrorists" in particular[2], it illicitly bolsters the government's two live witnesses who, according to the Government, will testify to statements by the defendant that his real purpose in going to Pakistan was to receive training in jihad,

This is not an element. It is a classic sentencing enhancement. It is not jurisdictional as is the element for 18 U.S.C. 922(c). Nor is it, as it is in drug amounts, determinative under which section of the statute the defendant is charged to invoke mandatory minimums. The Circuit has not spoken on this issue and we respectfully suggest that the decision on this issue is squarely within the Court's discretion. The Government, should the Court decide to bifurcate, has a remedy, mandamus. If history is any judge it is a remedy the government is prepared to avail itself

---

[2]See <u>Stereotypes of Muslims and Support for the War on Terror</u> abstract, John Sides, Kimberly Gross George Washington University (copy attached as exhibit).

LAW OFFICES
FREDERICK H. COHN

of procedurally. The defense has no intermediate appeal and, on direct appeal, will be limited to an abuse of discretion standard. If the Court is persuaded by the arguments for bifurcation, it should give the defendant the benefit of the procedural protections available to the Government and, in the interest of fairness, grant bifurcation.[3]

### Rule 404(b) Federal Rules of Evidence

The Government, arguing relevancy of all the "terrorist" connections it seeks to admit, takes its perfunctory analysis under Federal rules of Evidence 403 to a new low in refusing to acknowledge the prejudice involved.

Arguing that "...other conduct evidence is not unfairly prejudicial where it is not 'any more sensational or disturbing than the crimes' with which the defendant has been charged." (Citation omitted) the government shrugs its figurative shoulders at the level of prejudicial impact of what it believes are the urging by the defendant to listen to the inflammatory rhetoric of persons that the United States has felt justified to kill without the benefit of a trial.

The mere fact that the government can urge some theory of relevancy which it says can apply, does not make even those where the Court agrees with them, admissible where the impact of that evidence on the biases and fears of this particular jury in this particular crime is so stark.

Respectfully submitted,

Frederick H. Cohn

cc: James Loonam, AUSA
    Ali Kazemi, AUSA

---

[3] There is no trial date set and a mandamus would not delay the trial as it did in other cases.