**FREDERICK H. COHN**

ATTORNEY AT LAW

111 BROADWAY

SUITE 1805

NEW YORK, NY 10006

212-768-1110
FAX 212-338-9088
fcohn@frederickhcohn.com
www.fcohlaw.com

Frederick H. Cohn
Carina Patritti, Esq.
Irina Stankevitch, Paralegal

August 23, 2013

Hon. Eric N. Vitaliano
United States District Court
225 Cadman Plaza East
Brooklyn, NY 11210

**Re: United States v. Abdel Shehadeh
10 Cr. 1020(ENV)**

Dear Judge Vitaliano,

    This "sentencing memorandum" seems, even to me, unusual. It does not attempt to deal with an analysis of the guidelines, but, instead, seeks to examine whether the purposes of sentencing will be fulfilled or defeated by a knee jerk harsh sentence in a "terrorism case."

    Since you have ruled on the merger issue, we accept, for the purpose of this proceeding that Mr. Shehadeh committed three separate crimes by lying on three separate occasions to the FBI as to why he had attempted to go to Pakistan. We accept that his intention to engage in Jihad training as an "enemy of the United States" is disturbing and warrants a sentence that includes punishment. Given the circumstances, the actuality of the lies, and the effects of a sentence outside the internal parameters of years to be spent in jail, we wonder whether a more lenient sentence than the one that a government demands, where the government's investment in antiterrorism smacks of near paranoia rather than law enforcement, would be justified.

    We as a nation are, as we should be, obsessed by the obligation to protect our citizens from the threats to their lives and property posed by persons, foreign and domestic, who would engage in acts of terror. We are indiscriminate in our devotion to the task with high regard to the probability that an assault on our citizenry can cost lives. That is as it should be.[1]

---

[1] We respectfully suggest that an analogy to the Boston bombing is inapt although perhaps attractive. There is no evidence that Mr. Shehadeh's activities would have prompted such an act of savagery.

LAW OFFICES
# FREDERICK H. COHN

August 23, 2013
Shehadeh Sentencing Memo
Page-2-

     The unapologetic intrusion in the lives of our citizens by placing undercover agents in the houses of worship of Muslims, the monitoring of digital information both recommends itself for its devotion to the safety of our country and generates questions about its intrusion in the very fabric of, what some would say, used to be a free society. The argument in favor of this intrusion is that the cost of a single life makes it worth it. The resulting radicalization of a significant portion of our polity should give us pause.

     The failure to strike a balance has profound implications on the behavior of our Muslim citizens. If, as 18 USC 3553 instructs us, one of the goals of the imposition of a reasonable sentence is to deter future behavior, both of the criminal at the bar but also of those like minded people who should be dissuaded from criminal actions by being apprised of the cost of that behavior, then the effects of a harsh sentence can be radicalizing the very people who are, inexplicably, drawn to consider terrorism because of alienation due to their perceptions of our government.

     Although it does not deal with the task of preventing radicalization of Muslim youth, the NYPD paper, **Radicalization in the West: The Homegrown Threat**, NY Police Department, (2007) (copy attached) tracks multiple paths of young unaffiliated Muslims (with established Jehadi Groups such as Al-Qaeda) to entertaining Jehadist ideas. Coming to the [implied] conclusion that at least one of the paths leading to radical religious identification is the identification of the "group" (Muslims) as outsiders leads one to believe that certain police and judicial actions, otherwise consistent with our laws, such as sting operations and exceedingly harsh sentences, justifies in the minds of these young people, their identification of themselves as outsiders who are the targets of unfair treatment.

     Dr. Mills' discussion of the Jihadi nexus in Mr. Shehadeh's life (pp 3-4) (copy attached) seems to track as a source the NYPD paper. [2] If one reads the community correctly, a heavy sentence will not deter others from embracing these ideas. Quite the contrary, a heavy sentence imposed on Mr. Shehadeh for a crime that would be perceived by that community as minor (lying to the FBI about his intentions) would be seen as evidence that they were outsiders and seen by our government as such. From a logical perspective, the treatment of Mr. Shehadeh on a par with violent criminals or drug kingpins, might be disquieting to the community whose perceptions might be viewed by some as paranoid. To others, people familiar with the historical plight of outsiders in our courts, it might be viewed as perceptive.

     Here is what the facts of this case should teach us, a teaching that should result in a lesser, not a greater, sentence. Mr. Shehadeh, a young Muslim man, whose psychology seems to be erratic, (see report by Dr. Mark Mills) was active in a circle of young people in a mosque. He was open in hosting web sites lauding Jidhadist thoughts and methodology without regard to his

---

[2]This was not provided to Dr. Mills. Nor was it discussed with him by counsel.

LAW OFFICES
# FREDERICK H. COHN

August 23, 2013
Shehadeh Sentencing Memo
Page-3-

exposure to law enforcement whose sworn duty was to place him under a microscope. He did not commit crimes but contemplated them. He attempted to go to Pakistan and spoke openly in the Mosque and to his friends and casual acquaintance (one of who was an undercover agent placed by NYPD in the mosques to monitor Jihadist thought) about the purpose of his trip. He contemplated joining the army in order to turn on it.

We do not know whether this was a passing fantasy (as even the NYPD in its paper recognizes is often the case). In the year in which he was surveiled 24/7 by the FBI in Hawaii, he did nothing which was in any way criminal.

We do not argue that he shouldn't have been watched. We do question whether his fantasy of national impact of his solo efforts at jihad were delusional as was his notion that he would win the Nobel Peace Prize. (See Dr. Mills' report) Those delusions do not make him, necessarily, less dangerous. Deranged persons can kill. What is instructive is that until his arrest, his friends in the mosque were entertaining thoughts that seemed to credit him with some higher purpose. What will harsh treatment make them, and others like them, think?

Will a harsh sentence deter people like those friends, or will it radicalize them? We ought not presume the former. It would be wise, if not courageous, if the Court engages in the prophylaxes of leniency to prevent the latter.

Mr. Shehadeh deserves a jail sentence. The enhanced nature of the crime, found by the jury, mandates that it be more severe than a similar crime which was not in furtherance of terrorism. The similarity of his lies, which this court has found does not make the counts duplicitous, nevertheless should argue against consecutive sentences.

We respectfully suggest that this court has an opportunity to send a message to those outsiders who may be on the edge. "We enforce the law. We do not indulge in extreme repressive actions against your community. We are stern but fair".

Respectfully yours,

Frederick H. Cohn

cc: Alexander A Solomon/David Sarratt, AUSAs (by email)
  Pasquale DelGuadio, P.O. (by email)
  Abdel Shehadeh